Lee Allen HYETT, Appellant,

v.

**The STATE of Texas, Appellee.**

No. 14–00–00561–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

Oct. 18, 2001.

---

Dixie Lee Pritchard, Houston, for appellant.

Dan McCrory, Houston, for appellee.

Panel consists of Justices YATES, EDELMAN, and WITTIG.*

## OPINION

YATES, Justice.

A jury convicted appellant, Lee Allen Hyett, of possession of a controlled substance. The jury assessed punishment at five years' confinement, enhanced by two prior felony drug convictions. In two points of error, appellant challenges (1) the legal and factual sufficiency of the evidence and (2) the trial court's refusal to grant a mistrial for improper comments on appellant's post-arrest silence. We affirm.

### Background and Procedural History

On October 5, 1999, Deputy Kevin Morgan, with the Harris County Sheriff's Department, made a traffic stop at about 11:30 p.m. in Tomball. Appellant was alone in the car and as Deputy Morgan approached the car he saw appellant "moving around." Using his flashlight to illuminate the inside of the car, Deputy Morgan saw appellant "jerk" his hand away from an air conditioning vent. Deputy Morgan testified that once appellant's hand was removed from the vent he could

see about one inch of a glass pipe "teetering" in the slats of the vent. Through his experience as a police officer, Deputy Morgan testified, he recognized the pipe as an item used for smoking crack cocaine. Deputy Morgan searched appellant's car and retrieved the pipe. He could see burnt spots on the pipe. By use of a field test, Deputy Morgan positively identified the residue in the pipe as cocaine. He then placed appellant under arrest. The pipe was transported to the Harris County Medical Examiner's office for testing.

Richele Howelton, a forensic chemist at the Harris County Medical Examiner's office in the controlled substance laboratory, tested the pipe. Howelton testified that the burnt, beige, powdery residue on the pipe was crack cocaine in an amount of less than ten milligrams, which is less than one gram. Appellant did not testify at the guilt/innocence or punishment phase of his trial. The jury convicted appellant of possession of cocaine and assessed punishment at five years' confinement. This appeal followed.

### Legal and Factual Sufficiency

In his first point of error, appellant claims the evidence is legally and factually insufficient to support his conviction for possession of cocaine. We apply different standards when reviewing the evidence for legal and factual sufficiency.

When reviewing legal sufficiency, we view the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2788–89, 61 L.Ed.2d 560 (1979); *Cardenas v. State*, 30 S.W.3d 384, 389 (Tex.Crim.App.

* Senior Justice Don Wittig sitting by assignment.

2000). If a reviewing court determines the evidence is insufficient under the *Jackson* standard, it must render a judgment of acquittal because if the evidence is insufficient under *Jackson*, the case should never have been submitted to the jury. *See Jackson*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. In a legal sufficiency challenge, we do not re-weigh the evidence. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim.App.2000).

In reviewing factual sufficiency, we do not view the evidence "in the light most favorable to the prosecution." *Cain v. State*, 958 S.W.2d 404 (Tex.Crim.App. 1997). Rather we ask whether a neutral review of all the evidence, both for and against the finding, demonstrates the proof of guilt is either so obviously weak as to undermine confidence in the jury's determination, or, although adequate if taken alone, is greatly outweighed by contrary proof. *Johnson v. State*, 23 S.W.3d 1, 11 (Tex.Crim.App.2000). We will set aside a verdict for factual insufficiency only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Wesbrook v. State*, 29 S.W.3d 103, 112 (Tex.Crim.App.2000).

A person commits an offense if that person knowingly or intentionally possesses less than one gram of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon Supp.2001). When an accused is charged with unlawful possession of cocaine, the State must prove: (1) the defendant exercised actual care, custody, control, or management over the contraband and (2) the accused knew the object he possessed was contraband. *See Linton v. State*, 15 S.W.3d 615, 619 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). While the element of possession may be proved by circumstantial evidence, such evidence must affirmatively link the defendant to the offense, so that one may reasonably infer the defendant knew of the contraband's existence and exercised control over it. *See McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App.1985). The thrust of appellant's complaint is that the State did not affirmatively link him to the cocaine. We disagree.

Circumstantial evidence relevant to establish an "affirmative link" between the appellant and the contraband include: (1) appellant's presence when the contraband was discovered; (2) whether the contraband was in plain view; (3) appellant's proximity to and accessibility of the narcotic; (4) whether the appellant was under the influence of narcotics when arrested; (5) whether appellant possessed other contraband when arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of the contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the place where the drugs were found was enclosed; and (12) whether appellant owned or had the right to possess the place where the drugs were found. *Chavez v. State*, 769 S.W.2d 284, 288–89 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). Notwithstanding the preceding laundry list of possible links, there is no set formula of facts that necessitate a finding of an affirmative link sufficient to support an inference of knowing possession. *Porter v. State*, 873 S.W.2d 729, 732 (Tex.App.—Dallas 1994, pet. ref'd). Rather, affirmative links are established by a totality of the circumstances. *See Sosa v. State*, 845 S.W.2d 479, 483–84 (Tex.App.— Houston [1st Dist.] 1993, pet. ref'd) (finding the totality of the circumstances was of such a character that the jury reasonably could conclude the defendant was aware of the contraband and exercised control over

it). In this case, no less than seven of the suggested links have been met.

■ Appellant was the sole occupant of the car where the pipe was found. The test results of that pipe indicate the burnt, beige, powdery residue was crack cocaine. Deputy Morgan testified crack cocaine is an odorless substance. He further testified appellant's eyes were "glassy," a sign of drug use. Appellant disputes this allegation through two witnesses who claim his "glassy" eye condition resulted from crying earlier in the day. However, such testimony merely contradicts Deputy Morgan's testimony and is a conflict for the jury to resolve. *See Wyatt v. State*, 23 S.W.3d 18, 30 (Tex.Crim.App.2000).

Appellant further contends the evidence is legally insufficient because the cocaine was not visible to the naked eye and the residue is not considered a measurable amount. Although Officer Morgan testified he did not see a "white residue" of cocaine on the pipe, he did see "blackened burnt spots." Howelton, the chemist, testified the "beige powdery residue" in the pipe was "visible with the eye." Further, she specifically stated a positive test of the residue "indicated that it was cocaine in the amount of less than ten milligrams."[1] In any event, the Court of Criminal Appeals has held there is no requirement that a controlled substance must be visible and measurable to support a conviction for possession of contraband. *See King v. State*, 895 S.W.2d 701, 702–04 (Tex.Crim.App. 1995); *see also Joseph v. State*, 897 S.W.2d 374, 376 (Tex.Crim.App.1995) (finding it would be error if we were to "requir[e] the controlled substance to be visible to the naked eye in order to support appellant's conviction. Visibility is not an element of the offense of possession of a controlled substance.").

Next, appellant disputes his control over the cocaine by claiming he is not the owner of the car. However, the determining issue is control of the car at the time the contraband is found, not ownership. *See Villegas v. State*, 871 S.W.2d 894 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Appellant's mother, the owner, testified she was in the car fifteen minutes prior to sending appellant on an errand in it. She testified she sat in the middle front seat, adjusted the air conditioning vent, and at no time saw anything like a glass tube in the vent or in the car. Indeed, both of appellant's witnesses testified they did not see the pipe in the vent nearly fifteen minutes before appellant drove in the car alone.

Deputy Morgan testified that he saw the pipe "teetering" in the slats of the vent, in his opinion, in such a way that it would not have remained there if the car was moving. He also testified the pipe was in plain view when appellant "jerked" his hand away from the vent. In connection with the other established links, the fact that appellant was the sole occupant in the vehicle, the pipe was not present fifteen minutes prior to appellant's use of the vehicle, the contraband was in plain view and it was located in appellant's close proximity is sufficient to prove the first element of control. *See Linton*, 15 S.W.3d at 619; *Grant v. State*, 989 S.W.2d 428, 433 (Tex. App.—Houston [14th Dist.] 1999, no pet.).

■ Appellant claims the evidence is insufficient to support the second element that he knowingly possessed cocaine. Without an admission by the accused, knowledge may be inferred from the cir-

---

1. In light of the above facts, we respectfully note our disagreement with the dissent's characterization of the evidence as constituting an "unmeasurable" and "invisible" amount of cocaine.

cumstances. *Linton*, 15 S.W.3d at 618. The evidence is legally sufficient if the combined and cumulative effect of all the incriminating circumstances point to appellant's guilt. *See Russell v. State*, 665 S.W.2d 771, 776 (Tex.Crim.App.1983). Here, because appellant did not testify, the factual affirmative links that establish control may also be used to show appellant's knowledge. After viewing the evidence in the light most favorable to the prosecution, we believe that a rational trier of fact could have found the essential elements of the offense of possession of cocaine.

▆▆▆▆ Appellant also claims the evidence is factually insufficient to support his conviction for possession of cocaine. In conducting a factual sufficiency review, we only exercise our fact jurisdiction to prevent a clearly wrong and unjust result. *See Wesbrook*, 29 S.W.3d at 112. We do not find evidence in the record that greatly outweighs the evidence supporting the trial court's judgment. For the reasons discussed above, the jury's decision was not so contrary to the weight of the evidence as to be clearly wrong and unjust.

We conclude that the State presented legally and factually sufficient evidence to the jury to show that appellant was in possession of cocaine. Appellant's first point of error is overruled.

### Post–Arrest Silence

▆▆▆▆ In his second point of error, appellant claims the trial court erred in denying his motion for mistrial based on the State's comment on his post-arrest si-

lence.[2] During the State's examination of Deputy Morgan, the following exchange took place:

Prosecutor: Did the defendant ever deny at the scene that that's his pipe?

Mr. Jacobs [Defense Counsel]: Object to that, Your Honor. Ask the jury to be instructed to disregard that question.

The Court: Members of the jury, disregard the last statement, question and the answer of the officer.

Prosecutor: Did he ever say: Hey that's not my pipe.

Mr. Jacobs: I object to him going into that area. He's trying to—

The Court: Sustained.

Trial counsel then moved for a mistrial, which was denied, and the trial court again instructed the jury to disregard the question.

▆▆▆▆ When the trial court sustains an objection and instructs the jury to disregard, but denies appellant's motion for a mistrial, the question is whether the trial court erred in denying the mistrial. *Sauceda v. State*, 859 S.W.2d 469, 474 (Tex.App.—Dallas 1993, pet. ref'd). "Only when it is apparent that an objectionable event at trial is so emotionally inflammatory that curative instructions are not likely to prevent the jury being unfairly prejudiced against the defendant may a motion for mistrial be granted." *Bauder v. State*, 921 S.W.2d 696, 698 (Tex.Crim.App.1996); *see also Ford v. State*, 14 S.W.3d 382, 394 (Tex.App.—Houston [14th Dist.] 2000, no pet.). The asking of an improper question,

---

**2.** Appellant also cites two questions regarding his relatives' failure to contact the police after appellant's arrest. However, this court has previously held these type of questions directed solely to defense witnesses and which challenge the witnesses credibility do not constitute a comment on the defendant's post-arrest silence. *Abney v. State*, 1 S.W.3d 271, 276

(Tex.App.—Houston [14th Dist] 1999, pet. ref'd). Further, cross-examination of a witness' silence "under circumstances in which [s]he would be expected to speak, may be used to impeach the witness." *Montoya v. State*, 744 S.W.2d 15, 27 (Tex.Crim.App. 1987).

by itself, will seldom call for a mistrial. *Moore v. State*, 882 S.W.2d 844, 847 (Tex. Crim.App.1994). Further, an instruction to disregard an improper comment on appellant's post-arrest silence is generally sufficient to cure any harm. *See Dinkins v. State*, 894 S.W.2d 330, 356 (Tex.Crim. App.1995). In this case, the witness never answered the question, the trial court sustained appellant's objection and twice instructed the jury to disregard. To the extent that the question was objectionable, we find that it did not rise to the level necessary to warrant the granting of a mistrial. Appellant's second point of error is overruled.

The judgment of the trial court is affirmed.

WITTIG, J., dissenting.

DON WITTIG, Senior Justice, dissenting (Assigned).

"Is it not possible that an individual may be right and a government wrong? Are laws to be enforced simply because they are made? Or declared by any number of men to be good, if they are *not* good?."

*Henry David Thoreau, "A Plea for Captain John Brown," 1859*

Texas law too often converts the crime of possession of drug paraphernalia into possession of drugs; the stamp is the letter. Today our court turns possession of a glass tube with burn marks on it into a five year tour of the Texas penitentiary. Disingenuous or not, we Texans would hold that an invisible, unweighable substance with a probable mass of .0000x grams, i.e. hundredths or even thousandths of a single grain, can be *knowingly* possessed. The laboratory of the law can see what no man can see.

The corpus of law relied upon in the majority opinion, like Pinocchio's nose, grows. That law, such as it is, confounds and confuses, but refuses to quantify. That law ever expands, but is justly scrutinized on many fronts, a quantum of which I have already noted.[1] Today, let us examine the measure of proof necessary under Texas law to show knowing possession of a controlled substance.

**A. The facts are legally insufficient to prove knowing possession beyond a reasonable doubt even under current Texas law.**

The majority correctly notes that visibility is no longer an element of the offense of possession of a controlled substance. *Cantu v. State*, 546 S.W.2d 621, 622 (Tex. Crim.App.1977), *overruling Coleman v. State*, 545 S.W.2d 831, 835 (Tex.Crim.App. 1977). Rather, in order to show intent to possess, a court may rely on a defendant's "affirmative links" to the substance. *See generally King v. State*, 895 S.W.2d 701 (Tex.Crim.App.1995). There is no requisite number of "affirmative links." Rather, it is the "logical force the factors have in establishing the elements of the offense" that is important. *See, e.g., Gilbert v. State*, 874 S.W.2d 290, 298 (Tex.App.— Houston [1st Dist.] 1994, pet. ref'd).

---

1. For failure under *Daubert,* see *Victor v. State,* 995 S.W.2d 216, 225 (Tex.App.—Houston [14th Dist.] 1999) (Wittig dissenting). Consider as well whether five years in prison for possession of something that is invisible, unweighable, and unusable constitutes cruel and unusual punishment? Under similar but not identical circumstances, the court in *Cantu* held that two years was not cruel and unusual. Are due process concerns implicated where the sample is so small that it cannot even be reliably tested or weighed? Is a substance that has been chemically altered by fire still the same substance? To say possession of a crack pipe, even one that has been used, is knowing possession of drugs is simply false. Has the law come to fictitious convictions, or "is 'is' really is?"

The attached chart identifies and summarizes prior affirmative links decisions.[2] In the chart, those cases that are most similar to the case at bar are shaded. My review of some of the relevant case law shows that courts have relied upon almost anything to affirm a conviction by finding an affirmative link.

The Court of Criminal Appeals concluded that the "affirmative links" analysis is not actually a legal rule, having no methodology, but is instead shorthand for determining whether knowing possession is proven. *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App.1995). The majority opinion today is a good example of the manner in which appellate courts recite from a list of approved affirmative links, thereby giving the affirmative links analysis *de facto* legal-rule status.[3] Links relied upon in prior decisions, taken out of context, may or may not be probative in any given case. Here for example, the majority opinion relies on links emanating predominantly from *Chavez.* 769 S.W.2d 284 (Tex.App.—Houston [1st Dist.] 1989, writ ref'd). *Chavez* is distinguishable on at least two fundamental grounds: First, the drugs in *Chavez* were both visible and of a measurable quantity. Second, the drugs were found in a baggie in Chavez's pocket.

There is no better assurance of knowing possession than finding visible drugs on the defendant's person.[4]

The majority opinion cites *Villegas* for the additional proposition that, presumably, knowing possession derives from the defendant's control over the car at the time the drugs were found. Again, the problem with reliance on *Villegas* is contextual. Control of an automobile, whether as occupant, driver or owner, has oftentimes been used by our courts as an affirmative link. Yet it has never been used where the drugs were invisible and immeasurable. In *Villegas*, for example, the defendant was caught with 90 pounds of cocaine and 150 pounds of pot. The typical car scenarios have been: (1) a single person driving a car he "borrowed" claiming no knowledge of the big stash of drugs in the secret compartment, who is then affirmatively linked as the "sole occupant" or "driver"; or (2) two or more people in a drug-loaded car, the non-car-drivers and non-car-owners of which are then affirmatively linked because the drugs were "on their side of the car" and "easily accessible."

Diligent research has found no case in which a possession conviction was affirmed where the drugs were: invisible[5], unmeas-

---

**2.** Every now and then various courts endeavor to list affirmative links noted in past decisions. These litanies are then recited and relied upon in future decisions in conjunction with whatever new putative links are deemed probative. For this reason, the chart cannot be exhaustive.

**3.** Note the majority opinion announces: "In this case, no less than seven of the suggested links are met."

**4.** The majority opinion also cites *Linton v. State*, 15 S.W.3d 615, 619 (Tex.App.—Houston [14th Dist.] 2000, pet ref'd). In *Linton*, the contraband was visible, therefore probably also of a measurable quantity, and the defendant admitted he possessed drugs.

**5.** The majority opinion notes that the arresting officer testified that no white powder was visible on the pipe. The officer said he could only see "blackened burnt spots." However, the majority elects to place greater emphasis upon the testimony from the chemist that she saw "beige powdery residue" on the pipe. Regardless of whose testimony is correct, the crux of the issue is that "residue" is not cocaine. Burning anything produces "residue." The color of residue produced by fire is usually a combination of brown and black; and, indeed, the residue will be "powdery." Should we not hold these facts to be self evident? In any event, the obvious truth is that where cocaine is of a measurable quantity, it is usually visible. Where the quantity is not measurable, the cocaine *cannot be* visible.

urable, and not found on the defendant himself. Accordingly, the result reached in the majority opinion is one more improper extension of existing law.[6]

**B. The cases relied upon in *King v. State* do not support the rule of law pronounced.**

Justice Maloney's dissent in *King v. State* properly noted the illegitimate provenance of the law that a substance too small to be measured may form the basis of a conviction for possession. 895 S.W.2d at 706–708. Justice Maloney wrote:

> In my view we erroneously relied on *Cantu* and *Reyes* in *Daniels v. State*, 574 S.W.2d 127 (Tex.Crim.App.1978), in holding for the first time that other evidence might be used to prove knowledge for purposes of possession where the quantity of the substance was too small to be measured.

In *Cantu*, the defendant's plea admitted that he knowingly possessed heroin. 546 S.W.2d 621, 622 (Tex.Crim.App.1977). In *Reyes*, the defendant was caught trying to sell drugs, *i.e.* he represented that the substance at issue was drugs. 480 S.W.2d 373, 374–75 (Tex.Crim.App.1972). The pertinent fact is that in both *Reyes* and *Cantu* the defendant affirmatively stated that he knew he possessed drugs, even though the sample turned out to be invisibly small. In *Daniels*, by contrast, the defendant did not admit the substance existed, yet the conviction for possession of the invisible and unmeasurable was nevertheless (summarily) affirmed.[7] Under the facts of this case, I would agree with Justice Maloney that *Pelham* and *Greer* should control. *Pelham v. State*, 164 Tex. Crim. 226, 298 S.W.2d 171 (1957) (acquittal); *Greer v. State*, 163 Tex.Crim. 377, 292 S.W.2d 122 (1956) (acquittal; trace of narcotic on cotton used to wipe of needle after injection); *see also Coleman v. State*, 545 S.W.2d 831 (Tex.Crim.App.1977) (acquittal; vial containing unweighable amount of cocaine *estimated* at 1/28000 of an ounce of cocaine).[8]

Here the quantity was immeasurable. To this extent, the majority opinion's assertion that cocaine itself was visible in this case is against the great weight of the evidence, as well as human experience.

**6.** For the state of the law regarding whether visibility of cocaine (as opposed to mere residue), is required, see footnote 8 below. Also note that the included chart specifically distinguishes "residue cases" from cases where the controlled substance (or something looking substantially like it) was actually visible.

**7.** It is extremely noteworthy that *white powder* "cocaine" was in fact visible in *Daniels*. The problem for the prosecution was that the cocaine was of such low quality, i.e. so impure, that the amount of cocaine was immeasurable. The presence in the powder of ingredients used to cut cocaine formed the principal affirmative link in the court's analysis.

**8.** It is unclear from the decision in *King* whether visibility of cocaine itself, as opposed to mere residue, will suffice, absent the affirmative links present in that case. In *King*, the pipe was found in the defendant's pocket, it was still wet with saliva, and the defendant was obviously intoxicated. Justice Clinton's concurrence seemed to accept that cocaine itself had been visible in the pipe. Justices McCormick and Mansfield concurred with the explicit recognition that visibility of the cocaine itself should not be required. Justice Maloney dissented. Because none of the exceptionally probative affirmative links relied upon in *King* are present in this case, it is possible that the *King* court would have acquitted this defendant.

In any event, the proper question is not residue. Residue is but a burn mark, like a burnt pipe or a burnt house. The question is minimally what burnt, not whether a match lit some unknown or unknowable substance. A substance burned beyond recognition cannot be visible, especially if it cannot be weighed or measured. In our case modern technology opined contraband less than 10 mg—equivalent to less than 0.0003 ounces. 0.0003 ounces, as a matter of fact and a matter of law cannot be visible. And how

The notion that drug possession may be validly proved via nothing more than a liquid rinse of some surface offends common sense. The rule of law accepted in our court today is an abuse of hard science—a rinse analysis like the one performed in this case of virtually any surface is almost certain to yield surprising results. For example, that a rinse of the headliner in any car where people smoked will test positive for the chemicals in the smoke. If the smoke is from a marijuana cigarette and the owner is pulled over, should the driver face prison for drug possession?

The idea that something can be legally "identified" merely through ultra-violet[9] or molecular chemical analysis is at odds with our shared human experience and with the ethic that should inform our jurisprudence. When such strained notions become a rational basis for incarceration, the result must be both unconscionable and unconstitutional.

The entire affirmative link doctrine, as too often applied, is the reddest of herrings. It focuses our attention away from the reality that drug paraphernalia is drug paraphernalia, not drug possession. *Non est factum.* The instrument of torture is not torture. A used car not a new car. Truth not fiction. In short, how can one know the unknowable?[10] How can the state prove a man knows what a scientist cannot even see or accurately measure? Because I believe our laws should be first and foremost human, rational, and fearlessly true, I respectfully dissent, again.[11]

could such minuscule molecular particles be knowingly possessed? So the law meanders, like a muddled stream or a polluted well. *Cf. Pro.* 26:26

9. The wavelength of UV light is about $2 \times 10^{-7}$ meters, or two ten-millionths of a meter. Generally speaking, a UV analysis should be capable of resolving objects nearly as small as a single wavelength, *i.e.* many *orders of magnitude* smaller than possible with the human eye.

10. I refer to the physical world. Again, affirmative links, are used in the sense of circumstantial proof of knowledge. No problem, when there is sixty pounds of pot in the trunk, or perhaps even a syringe in hand and drugs at his feet. But remove the measurable drugs, then such a conviction is not based on science or fact—only affirmative conjecture. Under affirmative conjecture, no one needs to be dead for a murder, and nothing needs to be stolen for theft.

11. Since the state and the courts seem unwilling to cease their cecity, I strongly urge the legislature give this area of law a long, logical look.

| Case | Citation | Visible Drugs (not merely "visible residue") | Measurable Quantity of Drugs | Independent Paraphernalia | Area under D's sole control (not car) | Sole Occupant of Car | Drugs on D's side of Car | Car Driven or Owned by D | "Easy Accessibility" noted (car or otherwise) | "Furtive Gesture" as conscious guilt | physical Link to D; fingerprint, found on D's person | D looked high, drove erratically, or lied | D admitted existence of drug | Notes |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Boughton | 643 s.w.2d 147 | X | | | | X | X | | | | | X | | |
| Brazier | 748 s.w.2d 505 | X | Probably | X | | X | X | | | | X | | | |
| Brown | 911 s.w.2d 744 | X | Probably | | | | X | X | | | | | | 8 pounds of pot |
| Cantu | 546 s.w.2d 621 | X | Probably | | | | | | | | | | | |
| Campbell | 822 s.w.2d 776 | X | | | | | | | | | | | | |
| Castellano | 810 s.w.2d 800 | X | | | | | X | | | | | | X | 60 pounds of pot in secret compartment; baggie found in D's pocket |
| Chavez | 786 s.w.2d 368 | X | | X | | | | | | | | | | |
| Coonradt | 846 s.w.2d 874 | X | Probably | X | | | | X | | X | | | | |
| Daniels | 674 s.w.2d 127 | X | Probably | | | | | X | | | | | | |
| Davila | 930 s.w.2d 641 | X | X | X | | | X | X | | | | | X | D holding a syringe |
| Davis | 923 s.w.2d 781 | X | X | | | | X | X | | | | | | |
| Dixon | 918 s.w.2d 678 | X | X | | | | | | | | | X | | |
| Gilbert | 874 s.w.2d 290 | X | X | X | | X | X | X | X | | | | | |
| Grant | 989 s.w.2d 428 | X | X | | | X | X | X | | | | | | |
| Harmond | 960 s.w.2d 404 | X | X | | X | X | | | | | | | | |
| Harris | 994 s.w.2d 927 | X | X | | X | | | X | | | X | | | |
| Humason | 728 s.w.2d 363 | X | X | | X | | X | X | | | | | | pre-Geesa |
| Hurtado | 881 s.w.2d 738 | X | X | | X | | | X | | X | X | | | |
| Jenkins | 870 s.w.2d 626 | X | X | | | | | | | | | | | white powdery residue; tube in pocket |
| Johnson | 658 s.w.2d 623 | X | | | | | | | | | | | | 3mg methamphetamine |
| Joseph | 897 s.w.2d 374 | X | | | | | | | | | | | | D holding the syringe |
| King | 895 s.w.2d 703 | X | | | | | | | | X | | | | pipe in D's pocket; saliva on pipe |
| Kroopf | 970 s.w.2d 626 | X | X | | X | | X | X | | X | | | | |
| Linton | 15 s.w.3d 615 | X | Probably | X | X | X | X | X | | | | | | |
| Martin | 753 s.w.2d 384 | X | X | | | | | X | | | | | | pre-Geesa |
| Menchaca | 901 s.w.2d 640 | X | X | | X | | | X | | | | X | | |
| Myles | 946 s.w.2d 630 | X | X | X | | | | X | | | | X | | fake spare tire |
| Nixon | 928 s.w.2d 212 | X | Probably | | | | X | | | | | | | |
| Palmer | 857 s.w.2d 898 | X | X | | X | X | | X | | | | X | | |
| Park | 8 s.w.3d 351 | X | X | | | | | X | | | | | | |
| Parr | 864 s.w.2d 152 | X | | | | | | | | | | | | D holding syringe; Drugs on floor at feet; acquittal |
| Reyes | 575 s.w.2d 38 | X | X | | | | | | | | | | | |
| Shults | 575 s.w.2d 29 | X | | | | | | | | | | | | acquittal; balloon in mouth; secret car compartment |
| Torres | 818 s.w.2d 141 | X | X | | | | X | | | X | | | | |
| Victor | 995 s.w.2d 216 | X | X | X | | | | | | | | | X | |
| Villegas | 871 s.w.2d 894 | X | X | X | | | X | X | | | | | | 90 pounds of coke; 150 pounds of pot |
| Watson | 861 s.w.2d 410 | X | X | | | | X | X | | | | | | warm crack pipe in plain view |