MEMORANDUM OPINION

No. 04-04-00210-CR

Jose SALDIVAR,
Appellant

v.

The STATE of Texas,
Appellee

From the 218th Judicial District Court, LaSalle County, Texas
Trial Court No. 03-05-00026-CRL
Honorable Donna S. Rayes, Judge Presiding
 
Opinion by:    Phylis J. Speedlin, Justice
 
Sitting:            Alma L. López, Chief Justice
Catherine Stone, Justice
Phylis J. Speedlin, Justice
 
Delivered and Filed:   April 6, 2005

AFFIRMED
            Jose Saldivar appeals his conviction of possession of cocaine with intent to deliver. Saldivar
asserts that the evidence is legally and factually insufficient to support his conviction and that the
trial court erred in failing to include an instruction in the jury charge. We affirm the trial court’s
judgment.
 

Background
            State Trooper Homero Marines, a twenty-two year veteran of the Texas Department of Public
Safety, moved to 809 Center Street in Cotulla, Texas in December of 2001. Jose Saldivar and his
brother, Carlos, lived next door to Marines. Although the neighborhood generally had light traffic,
Marines testified that beginning Friday evening and throughout the weekend, a large volume of
traffic would stop at the Saldivars’ house. One individual would get out of the car, go to the house,
knock at the door, go inside, and then leave shortly thereafter. The individuals did not stay at the
Saldivars’ house more than ten or fifteen minutes. Marines met with a LaSalle County narcotics
officer, Joseph Canales, and informed him of the activity because Marines believed that the Saldivars
were possibly dealing narcotics. Marines did not obtain names, descriptions of individuals or
vehicles, or license plate numbers during his observations. Marines also did not take any
photographs. Marines did not assist in the Saldivars’ arrest.
            Sergeant Joseph Canales, a nineteen year sheriff’s department veteran, had been assigned to
narcotics for thirteen years. On November 23, 2002, Canales was working a narcotics case primarily
involving Jose Saldivar. Canales had received information about a year prior to that date about
suspicious activity at the Saldivars’ residence from Marines. Around November of 2002, an
informant approached Canales and identified the Saldivars’ residence as being involved in dealing
cocaine. The informant agreed to go into the residence and observe the activities. The informant
went into the residence at least three times. The informant told Canales that pre-packaged aluminum
foil containers of cocaine were being sold for twenty dollars each. The information received from
the informant was with regard to Jose Saldivar. Canales admitted that the informant was
compensated for the information. Canales had used this particular informant in the past, and the
informant had proven to be reliable. 
            Canales also conducted drive-by surveillance and observed a lot of youths from the
community going to the residence. Towards night and weekends, vehicles would arrive, someone
would exit the vehicle and go inside the house but depart a short time later. Canales testified that
this activity was consistent with narcotics dealing.
            Canales prepared an affidavit for a search warrant based on the information available to him. 
On November 23, 2002, Canales went to execute the search warrant. The officers yelled “police”
and entered through an unlocked door. The officers handcuffed the five males present, including the
Saldivars. Jose Saldivar consented to the officers searching the residence. Although Jose appeared
surprised at the officers’ entry, he did not appear surprised that the officers were looking for cocaine. 
A clear package containing cocaine was recovered from the upper shelf of the closet in the rear
bedroom. Throughout the closet and in the bedroom, the officers recovered twenty-six precut
aluminum foils used in packaging cocaine. In addition, the officers recovered three precut aluminum
foils in the front bedroom. The officers also recovered three police batons, a police scanner, and two
rifles. None of the men gave a statement, and Canales did not determine which of the Saldivars slept
in which bedroom.
            Armando Romo, a narcotics investigator with the sheriff’s department, assisted in executing
the search warrant for the Saldivars’ home. Romo recovered a bag of cocaine, some batons, and
some precut aluminum foils that Romo stated were used to package cocaine to sell for twenty
dollars. Romo also located three precut aluminum foils in the front bedroom on top of the bed. 
Romo did not determine which of the Saldivars slept in which bedroom.
            Juan Ortiz, the lab supervisor for the crime lab, testified that the bag recovered from the
Saldivars’ house contained 10.87 grams of cocaine.
            Carlos Saldivar testified that he shared a home with his brother. Carlos testified that the men
were at his home to watch a fight on television. Carlos slept in the back bedroom. Carlos testified
that he used the aluminum foil recovered from his room to make Chinese stars. Carlos stated that
he kept baking soda or baking powder in a bag in his closet to clean his guns. Carlos testified that
his brother, Jose, slept in the front bedroom. Carlos stated that Jose did not know that he kept the
baking soda in his room. 
            Jose Saldivar testified that he did not know the aluminum foil was in his bedroom. Jose
stated that the large amount of traffic was attributable to friends stopping by the house. With regard
to Carlos keeping a bag of baking soda in his room to clean his guns, Jose testified that he knew
Carlos “was trying to experiment with different stuff” but he did not know Carlos kept a bag of
baking soda in his room. 
Sufficiency of the Evidence
            In reviewing the legal sufficiency of the evidence, we view the evidence in the light most
favorable to the prosecution to determine whether a rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319
(1979). In our factual sufficiency review, we must consider all of the evidence to determine whether
the judgment is “so contrary to the overwhelming weight of the evidence as to be clearly wrong and
unjust.” Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We are not permitted to
reweigh the evidence, rather we defer to the trier-of-fact’s findings, particularly those based on
credibility determinations. Cain v. State, 958 S.W.2d 404, 407-09 (Tex. Crim. App. 1997).
            To prove unlawful possession of a controlled substance, the State must prove that: (1) the
accused exercised control, management, or care over the substance; and (2) the accused knew the
matter possessed was contraband. Poindexter v. State, 153 S.W.3d 402, 405 (Tex. Crim. App.
2005). Whether this evidence is direct or circumstantial, it must establish that the accused’s
connection with the drug was more than just fortuitous. Id. at 405-06. “This is the whole of the
so-called ‘affirmative links’ rule.” Id. at 406. This rule simply restates the common-sense notion
that a person may jointly possess property like a house but not necessarily jointly possess the
contraband found in that house. Id. Accordingly, when the accused is not in exclusive possession
of the place where the substance is found, it cannot be concluded that the accused had knowledge
of and control over the contraband unless there are additional independent facts and circumstances
which affirmatively link the accused to the contraband. Id. Circumstantial evidence relevant to
establish an “affirmative link” between the appellant and the contraband include: (1) appellant’s
presence when the contraband was discovered; (2) whether the contraband was in plain view; (3)
appellant’s proximity to and accessibility of the narcotic; (4) whether the appellant was under the
influence of narcotics when arrested; (5) whether appellant possessed other contraband when
arrested; (6) whether appellant made incriminating statements when arrested; (7) whether appellant
attempted to flee; (8) whether appellant made furtive gestures; (9) whether there was an odor of the
contraband; (10) whether other contraband or drug paraphernalia was present; (11) whether the place
where the drugs were found was enclosed; and (12) whether appellant owned or had the right to
possess the place where the drugs were found. See Swarb v. State, 125 S.W.3d 672, 684 (Tex.
App.—Houston [1st Dist.] 2003, pet. dism’d); Hyett v. State, 58 S.W.3d 826, 830 (Tex. App.—
Houston [14th Dist.] 2001, pet. ref’d). Although courts recognize many non-exhaustive factors that
may constitute affirmative links, the number of factors is not as important as the degree to which
they, alone or together, tend affirmatively to link the accused to the drug. See Swarb, 125 S.W.3d
at 684; Hyett, 58 S.W.3d at 830. 
            Intent to deliver a controlled substance may be proved by circumstantial evidence, including
evidence surrounding its possession. Reece v. State, 878 S.W.2d 320, 325 (Tex. App.—Houston [1st
Dist.] 1994, no pet.). Intent to deliver may be inferred from the quantity of drugs possessed, the
manner in which the drugs are packaged, and the presence of drug paraphernalia. Williams v. State,
902 S.W.2d 505, 507 (Tex. App.—Houston [1st Dist.] 1994, pet. ref’d).
            In this case, Jose was present when the search warrant was executed and had access to the
contraband. The aluminum foil packets recovered from the bedroom used by Jose were in plain
view. The officers testified that foil packets of this size are used to package narcotics. Furthermore,
the informant specifically identified Jose as being present during the periods of time that the
informant was in the residence and observed pre-packaged aluminum foil containers of cocaine being
sold for twenty dollars each. 
            The evidence is legally and factually sufficient to support Jose’s conviction of possession of
cocaine with intent to deliver. Jose’s first issue is overruled.
Jury Charge
            In reviewing a claim of jury charge error, this court follows a two-step process. First, we
decide whether error exists in the jury charge and if so, we determine whether the error caused the
defendant to suffer sufficient harm that it requires reversal. See Hutch v. State, 922 S.W.2d 166,
170-71 (Tex. Crim. App. 1996). The degree of harm necessary for reversal depends upon whether
the error was preserved. Id. at 171. If no objection is made at trial, the appellant can obtain reversal
only if the error caused him egregious harm. Id. Errors which result in egregious harm are those
which affect “the very basis of the case,” deprive the defendant of a “valuable right,” or “vitally
affect a defensive theory.” Id. Because Jose did not make an objection to the jury charge with regard
to the issue raised on appeal, Jose must show error and egregious harm.
            “The usual way in which trial courts deal with evidence admissible only against one co-defendant is to instruct the jury that it may consider such evidence only against the defendant as to
whom it was admitted and may not consider it against other defendants.” 43 George E. Dix &
Robert O. Dawson, Texas Practice: Criminal Practice and Procedure § 33.44 (2001). 
Although Jose contends that the trial court erred in failing to give this type of instruction in this case,
Jose does not identify any evidence that was admissible only against Carlos. Even assuming the trial
court erred, Jose did not suffer egregious harm as a result. The information regarding the
informant’s observations clearly was admissible with regard to Jose. This evidence, coupled with
the aluminum foil packets recovered from Jose’s bedroom, provided the “affirmative link” necessary
to find Jose in possession and the circumstantial evidence of his intent to deliver.
            Jose’s second issue is overruled.
Conclusion
            The judgment of the trial court is affirmed.
 
Phylis J. Speedlin, Justice

DO NOT PUBLISH