

# NUMBER 13-10-00604-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

MARITA MESA,                                           **Appellant,**

**v.**

THE STATE OF TEXAS,                                       **Appellee.**

## On appeal from the 28th District Court
## of Nueces County, Texas.

# MEMORANDUM OPINION

## Before Chief Justice Valdez and Justices Benavides and Vela
## Memorandum Opinion by Chief Justice Valdez

Appellant, Marita Mesa, appeals from a conviction of unlawful possession of more than one gram but less than four grams of cocaine—a third–degree felony offense. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a) (West 2010); *see also id.* § 481.102 (West 2010). Mesa was sentenced to two years' confinement. By one issue, Mesa contends that the evidence was insufficient to support her conviction. Specifically, Mesa argues that the evidence was insufficient to show that she exercised control, custody, management, or care over the cocaine. We affirm.

# I. BACKGROUND

According to testimony at trial, Michael Lee Morin, an officer with the Robstown Police Department, stopped Mesa on February 10, 2010, because he observed her commit a traffic violation. Officer Morin testified that the driver's side brake light on the black Mustang Mesa was driving was not functioning. Officer Morin stated that although the sun was out, he could not see inside the vehicle because of the tinted windows. Because the driver's side window was not operational, the door was opened during the stop. Officer Morin testified that he immediately smelled the "strong odor" of "freshly burnt" marihuana emanating from inside Mesa's vehicle. According to Officer Morin, Mesa denied smoking marihuana and blamed the odor on her brother. Mesa told Officer Morin that she did not possess a driver's license, but she properly identified herself.

Officer Morin asked Mesa to exit the vehicle and searched the vehicle. Officer Morin testified that he observed "clear baggies in the back seat" in "plain sight."[1] Officer Morin described the baggies in the back seat as clear sandwich baggies with some of them having "cut corners" and stated that the baggies were "all over the place." According to Officer Morin, he became suspicious because "well, that usually indicates that because of the smell of the burnt mari[h]uana, usually a lot of times people carry the mari[h]uana in a clear baggie. So right away I assumed there might be more mari[h]uana in the vehicle." Officer Morin explained that in cases where clear plastic baggies with "cut corners" are found "that a lot of times they will use—they will put the mari[h]uana in the corners, seal it off, cut them off, and sell them that way." When asked whether cocaine is packaged that way, Officer Morin replied, "Definitely."

---

[1] On cross-examination, Officer Morin clarified that the baggies were on the floor of the backseat of the vehicle behind both the driver's and passenger's seats.

Officer Morin also saw "a clear little plastic baggie sticking out of the center console, slash arm rest, I guess."[2] Officer Morin clarified that the center console was located "in between the driver and the passenger seat" and that it had a "lid that closes." Officer Morin continued searching the vehicle and opened the center console. Officer Morin stated, "As soon as I opened [the console], I found like, I think it was five baggies of [a] white powder[y] substance, believed to be cocaine," which were all "single packaged." When asked if the substance was packaged in a manner that "could be easily sold on the streets?", Officer Morin responded, "Yes." Officer Morin believed, based on his experience, that each of the baggies of cocaine would be sold for twenty dollars.[3]

According to Officer Morin, Mesa told him that she was not aware of the baggies of cocaine and "put the blame on her brother." Officer Morin testified that Mesa said that her brother had recently used the vehicle, but Mesa did not state that anybody else had used the vehicle. Officer Morin said, "I just asked her, you know, how did it get there. And I'm trying to recall, I believe she said that they had been moving prior to that, and maybe her brother—you know, he had used the car and moved as well. So, you know, if it belonged to anybody, it belonged to the brother."

On cross-examination, Officer Morin stated that: (1) Mesa did not attempt to evade him; (2) Mesa did not provide a fictitious name; (3) Mesa did not appear to be under the influence of any substance; (4) the area where he stopped Mesa was not a suspicious area; (5) he did not observe Mesa make any furtive gestures; and (5) there

---

[2] On re-direct examination, the State asked if the console was within the reach of the person driving the vehicle, and Officer Morin replied, "Yes."

[3] Officer Morin later testified that a test revealed that the substance was in fact cocaine. Also, Mesa stipulated in State's exhibit 3, admitted into evidence, that the substance that was found in the vehicle was cocaine with a net weight of 1.31 grams.

3

was nothing unusual about Mesa's conduct or appearance. Officer Morin testified that he did not find any weapons, razors, crack pipes, or rolling papers in the vehicle, and Mesa did not have a large amount of cash.

Mesa's mother, Margarita Mesa, testified that on the day of Mesa's arrest, Mesa was living with Margarita and they were in the process of moving to a new residence. Margarita owned the Mustang Mesa was driving on the day of her arrest. According to Margarita, her other daughter, Maggie May De Los Santos, also used the Mustang to go to the store. However, Margarita testified that De Los Santos did not use the Mustang that day. Margarita stated that her husband could not use the vehicle because he is in a wheelchair and that her son, "Raul [Mesa] III," was not using the vehicle during that time period.[4] According to Margarita, Raul III was not at her house on the day that Mesa was arrested.

Margarita testified that she called Raul III asking if he could arrange for some help moving to her new address. According to Margarita, Raul III told her he was sending some men on the "B bus" to help with the move and that Margarita needed to pick the men up at the HEB in Robstown. Margarita explained that she hired three men from "the ministry" in Corpus Christi, Texas.[5] The men rode the bus to Robstown, and then she picked them up at an HEB. Margarita stated that she did not know the men; however, she claimed that she loaned the Mustang to the men so that they could assist with the move. Margarita used the vehicle a few times that day, and she did not smell marihuana in it. Margarita testified that she did not know about the cocaine found in the

---

[4] Margarita stated that she had two sons—Mark Mesa and "Raul [Mesa] III." However, Mark is deceased.

[5] Margarita testified that Raul III lived in Corpus at the time. Margarita, Mesa, Margarita's husband, and "Little Rudy," Mesa's son, lived together in Robstown.

4

vehicle and that the baggies of cocaine did not belong to her. On cross-examination, Margarita claimed that she observed the men who were helping her move make frequent trips to the bathroom in pairs.

On re-direct examination, Margarita stated that only one of the men drove the vehicle, but she did not ask him if he had a driver's license. Margarita acknowledged that she had been "charged with her husband on a drug case." The charges against Margarita were dismissed; however, her husband was convicted of possession of heroin. Margarita acknowledged that she was shown a document showing that her son, Raul III, had also been convicted of possession of marihuana; however, Margarita claimed that she was unaware of Raul III's conviction.

The trial court found Mesa guilty of unlawful possession of more than one gram but less than four grams of cocaine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a). The trial court sentenced Mesa to two years probation. This appeal followed.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

The court of criminal appeals has held that there is "no meaningful distinction between the *Jackson v. Virginia* legal sufficiency standard and the *Clewis* factual-sufficiency standard" and that the *Jackson* standard "is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 902–03, 912 (Tex. Crim. App. 2010) (plurality op.). Accordingly, we review Mesa's claims of evidentiary sufficiency under "a rigorous and proper application" of the *Jackson* standard of review.[6] *Id.* at

---

[6] Mesa argues in her brief that the evidence was factually insufficient to support the verdict;

5

906–07, 912. Moreover, we do not refer separately to legal or factual sufficiency and will only analyze Mesa's issues under the *Jackson* standard. *See id.* at 895.

Under the *Jackson* standard, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see Brooks*, 323 S.W.3d at 898–99 (explaining that in the *Jackson* standard we consider "all of the evidence in the light most favorable to the verdict," and determine whether the jury was rationally justified in finding guilt beyond a reasonable doubt). "[T]he fact[-]finder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution." *Jackson*, 443 U.S. at 319 (emphasis in original); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases is the exclusive judge of facts proved and the weight to be given to the testimony . . . ."); *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000) ("The jury is the exclusive judge of the credibility of witnesses and of the weight to be given testimony, and it is also the exclusive province of the jury to reconcile conflicts in the evidence.").

We measure the legal sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Coleman v. State*, 131 S.W.3d 303, 314 (Tex. App.—Corpus Christi 2004, pet. ref'd) (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). A person commits the offense of possession of a controlled substance if the person knowingly or intentionally possesses cocaine. TEX.

however, due to the court of criminal appeals disposition in *Brooks*, we need not conduct a factual sufficiency review of the evidence. *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.).

HEALTH & SAFETY CODE ANN. § 481.115(a); *see id.* § 481.102. "To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband." *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005); *see* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a).

However, "[w]hen an accused is not in exclusive possession and control of the place where contraband is found, it cannot be concluded he had knowledge or control over the contraband unless there are additional independent facts and circumstances that affirmatively link him to the contraband." *Lassaint v. State*, 79 S.W.3d 736, 740 (Tex. App.—Corpus Christi 2002, no pet.). A link between the accused and the contraband may be established by the following nonexclusive list of factors: (1) the contraband was in plain view; (2) the accused owned the premises or had the right to possess the place where the contraband was found; (3) the accused had a large amount of cash when found; (4) the contraband was conveniently accessible to the accused; (5) the accused's close proximity to the contraband; (6) there was a strong residual odor of the contraband; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was present on the accused or in plain view; (9) the accused was under the influence of narcotics when arrested; (10) the accused's conduct indicated a consciousness of guilt; (11) the accused attempted to escape or flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) conflicting statements about relevant matters were made by the occupants; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lopez v. State*,

7

267 S.W.3d 85, 92 (Tex. App.—Corpus Christi 2008, no pet.). The sufficiency of links is not based on the number of factors established, but on the logical force of all the circumstantial and direct evidence. *Evans v. State*, 202 S.W.3d 158, 162 (Tex. Crim. App. 2006); *Lopez*, 267 S.W.3d at 92; *Lassaint*, 79 S.W.3d at 741.

Other factors linking an accused to the contraband in the context of an automobile stop include that the accused was the driver of the vehicle in which the contraband was found, and that the contraband was found on the same side of the car seat as the accused was sitting. *Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. 1981) (finding that a factor linking the accused to the contraband included that the accused was the driver of the vehicle). Furthermore, "[c]onvenient access to the contraband is an accepted factor that may affirmatively link an accused to contraband found in a vehicle." *Robinson v. State*, 174 S.W.3d 320, 326 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd) (citing *Deshong*, 625 S.W.2d at 329; *Hawkins v. State*, 89 S.W.3d 674, 677 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd)). Contraband is conveniently accessible to an accused when it is "within the close vicinity of the accused and easily accessible while in the vehicle so as to suggest that the accused had knowledge of the contraband and exercised control over it." *Id.* (citing *Rhyne v. State*, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981); *Deshong*, 625 S.W.2d at 329).

### III.    DISCUSSION

By her only issue, Mesa contends that the evidence is insufficient to support her conviction.[7] In this case, Mesa was the sole occupant of the vehicle and in exclusive possession of it when the cocaine was found; this linked Mesa to the cocaine in a significant manner. *See Hyett v. State*, 58 S.W.3d 826, 831–32 (Tex. App.—Houston

---

[7] Mesa does not challenge the initial stop and the search of her vehicle.

8

[14th Dist.] 2001, pet. ref'd) (concluding that the evidence was sufficient to show knowing possession where defendant was sole occupant of the car that he controlled but did not own and cocaine was found in plain view and in close proximity to defendant); *see also Smith v. State*, No. 01-10-00400-CR, 2011 Tex. App. LEXIS 3282, at *11–12 (Tex. App.—Houston [1st Dist.] Feb. 24, 2011, no pet.) (finding fact that the accused was the sole occupant of the vehicle where contraband was found as a significant link to contraband); *Harmond v. State*, 960 S.W.2d 404, 406 (Tex. App.— Houston [1st Dist.] 1998, no pet.) (holding evidence was legally sufficient to support defendant's conviction for possession of cocaine when evidence showed that defendant was sole occupant and driver of the car in which a makeshift crack pipe containing cocaine was found in plain view on floorboard between front bucket seats). Mesa was the driver of the vehicle. *See Deshong*, 625 S.W.2d at 329. Mesa was at the location when Officer Morin conducted the search and found the cocaine. The contraband was found in close proximity to Mesa, and the contraband was conveniently accessible to her. *See Lopez*, 267 S.W.3d at 92; *Robinson*, 174 S.W.3d at 326. In plain view, there were plastic baggies cut in a manner used for packaging drugs strewn throughout the floor of the backseat of the vehicle. *See Lopez*, 267 S.W.3d at 92. A plastic baggie was visibly sticking out of the driver's side console where Officer Morin found the cocaine. *See id.* Mesa claimed that the cocaine belonged to her brother; however, Margarita testified that Mesa's brother had not driven the vehicle or been to the home on that date. Based on this evidence, the fact-finder may have believed that Mesa lied to Officer Morin thus, indicating knowledge of the illegal nature of the substance found in the vehicle and a clear indication of Mesa's consciousness of guilt. *See id.*

Viewing the evidence in the light most favorable to the prosecution, we conclude that a rational fact-finder could have found beyond a reasonable doubt that Mesa exercised actual care, custody, control, or management of the cocaine, and that she was conscious of her connection with it and knew what it was. *See Jackson*, 443 U.S. at 319; *see also Brooks*, 323 S.W.3d at 898–99. Although Mesa claims that there are many factors missing, which would have linked her to the contraband, those missing factors do not abrogate the logical force of the affirmative links which are present in this case. *See Evans*, 202 S.W.3d at 162; *Lopez*, 267 S.W.3d at 92; *Lassaint*, 79 S.W.3d at 741. Accordingly, we conclude that the evidence was legally sufficient to support Mesa's conviction. We overrule Mesa's sole issue.

## IV.    CONCLUSION

We affirm the trial court's judgment.

_____
ROGELIO VALDEZ
Chief Justice

Do not Publish.
TEX. R. APP. P. 47.2(b)
Delivered and filed the
20th day of October, 2011.