COURT OF APPEALS









COURT
OF APPEALS

EIGHTH
DISTRICT OF TEXAS

EL
PASO, TEXAS

 

ALEJANDRO OJEDA,                                         )

                                                                              )              
No.  08-02-00404-CR

Appellant,                          )

                                                                              )                    Appeal from the

v.                                                                           )

                                                                              )                
168th Impact Court

THE STATE OF TEXAS,                                     )

                                                                              )           
of El Paso County, Texas

Appellee.                           )

                                                                              )              
(TC# 20000D03230)

                                                                              )

 

 

O
P I N I O N

 

Alejandro Ojeda
appeals his conviction for possession with intent to deliver more than four
grams but less than two-hundred grams of heroin.  A jury found him guilty and the trial court
assessed punishment at 35 years=
imprisonment.  On appeal, Appellant
raises four issues:  two deal with
evidentiary matters; one raises a legal insufficiency argument; and the last
issue challenges the trial court=s
denial of Appellant=s motion
to quash indictment.  We affirm. 








At approximately 8
p.m. on November 3, 1999, Appellant, driving a gray 1991 Chrysler Caravan,
approached the U.S. Customs inspection booth at the Paso Del Norte Bridge.  Martha Guerra was sitting in the front
passenger seat.  During routine
questioning, Customs Inspector Armando San Roman asked Appellant for his
citizenship, his purpose for traveling to Mexico, and inquired about the
vehicle=s
ownership.  Appellant responded that he
was a U.S. citizen, and that he had bought the vehicle about thirty days prior
in Mexico.  As he was conducting the
questioning, Inspector San Roman noticed Appellant Amoving
around and sitting upright and getting nervous.@  Noticing that the vehicle did not have a
front license plate, Inspector San Roman asked the Appellant and Ms. Guerra for
identification and proceeded to the back of the vehicle.  Inspector San Roman testified at trial that
Appellant=s demeanor
by this time was unusual; Appellant was talking loud, getting tense, and then
he sat upright and appeared to be getting anxious.  According to Inspector San Roman, Appellant=s nervous behavior was out of the
ordinary.  In addition, Ms. Guerra, with
the exception of declaring her citizenship, did not utter a word, although
Inspector San Roman testified that he directed some questions towards her.[1]  Inspector San Roman testified that she was
sitting at the edge of her seat, just looking at him; she appeared to be
nervous and anxious.  Inspector San Roman
testified that Appellant=s
behavior and Ms. Guerra=s
silence made him get suspicious.

Inspector San
Roman walked to the back of the vehicle and saw that the vehicle=s plates were from Kansas.  He returned back to the driver=s side and proceeded to ask the same
questions he had asked before to verify that the answers were the same.  This time, Appellant stated that he had been
in Juarez for about two to three hours and that the reason for his trip was to
take Ms. Guerra=s cousin
to Mexico.  Inspector San Roman then
noticed that the names on Appellant=s
and Ms. Guerra=s ID=s matched the names provided on a Abe on the lookout@ bulletin.  Inspector San Roman sent the vehicle to the
secondary inspection station.[2]  








Senior Inspection
Officer Maria Elena Frazier was standing at Inspector San Roman=s booth when all this was happening,
and walked alongside the vehicle to the secondary inspection booth.  Once the vehicle pulled into the secondary
inspection booth, Inspector Frazier took a declaration from the Appellant in
which he stated that he was not bringing anything back from Mexico.[3]  She then had the Appellant and Ms. Guerra
stand away from the vehicle.  

Inspector
John Maxwell, trained as a canine enforcement officer, was asked to screen the
Appellant and Ms. Guerra with the canine. 
He testified that the canine is trained to alert to marijuana, hash,
cocaine, heroin, and crystal meth, and that he is what is called a passive
alerter.  This means that if the canine
gets the odor of narcotics, he changes his behavior by wagging his tail, his
ears come up, his breathing gets heavier, and then he sits next to where the
odor is detected.  On this occasion,
Inspector Maxwell testified that the canine alerted to both the Appellant and
Ms. Guerra, who were standing about a foot apart.  The canine then went over to the open door of
the vehicle, sniffed the passenger seat and alerted to it as well.  Although Inspector Maxwell testified that he
is not trained to search a vehicle with the canine, he testified that the
canine itself does not differentiate between contraband odor on people and
vehicles.  








Once
the canine had alerted to the Appellant and Ms. Guerra, Inspector Frazier
escorted Ms. Guerra to the main building. 
The Appellant was escorted by a male officer as well.  Inspector Frazier placed Ms. Guerra in a holding
cell and then requested the assistance of Inspector Dianne Crissman in conducting
a pat-down of Ms. Guerra.  Inspector
Frazier asked Ms. Guerra to stand, put her hands against the wall, and
spread her legs.  Initially, Ms. Guerra
did not want to comply and had to be asked several times before Inspector
Frazier had to push open her legs.  In
conducting a pat-down of Ms. Guerra, Inspector Frazier felt a foreign substance
in Ms. Guerra=s groin
area.  Inspector Frazier asked Ms. Guerra
to remove the object, but it was not until she asked Ms. Guerra if she needed
medical assistance in removing the object that Ms. Guerra complied.  Ms. Guerra removed from her vaginal cavity a
condom containing about four to five golf size balls of a black tar like substance
which were wrapped in another condom.  The
two condoms combined formed a cylinder like shape.  The substance field tested positive as
heroin.  Further laboratory testing
confirmed that the substance was in fact pure heroin containing some
adulterants and dilutants, and that it weighed 125.19 grams.  

Inspector
Frazier testified that she saw Ms. Guerra walking funny, as if she was holding
something between her legs, but that she had not suspected she was hiding
contraband, until the heroin was found. 
Inspector Crissman testified that Ms. Guerra was taking very small
steps, as if she was having a hard time walking.

Upon
searching Ms. Guerra=s
purse, Inspector Crissman testified that she found among other things, a
condom.  A search of vehicle uncovered an
open plastic bag sitting in between the driver=s
seat and the passenger=s
seat that contained an unopened box of condoms, an open box of condoms, two
open condom wrappers, and lubricants, one container which was open.  The condom in Ms. Guerra=s purse matched the brand on the condom
wrappers and both boxes.  








Over
Appellant=s
objections, Officer John Majerczyk, a thirteen-year veteran with the Metro
Narcotics Task Force of the El Paso Sheriff Department, testified that on the
day in question, he responded to a call that an arrest had been made in
connection with some heroin being seized. 
He testified that with information provided by a confidential informant,
he placed a Abe on the
look out@
bulleting regarding the possible trafficking of heroin.[4]  Detective Majerczyk testified that he first
made contact with Ms. Guerra and then went to Appellant=s
holding cell.  When he met the Appellant,
Officer Majerczyk stated that the first thing he did was tell Appellant that he
was under arrest and then gave him his Miranda warnings.  Without asking Appellant any questions or
informing him that heroin had been found on Ms. Guerra, Appellant told the
officer that he could not be arrested because he was not carrying the
heroin.  Officer Majerczyk also testified
that Appellant would not provide a written statement.  The officer also noticed heavy tracks of
heroin usage on Appellant=s
forearms.  Finally, he testified that the
street value of the heroin seized, once diluted, would be approximately
$100,000.








Over
the numerous and strong objections of Appellant=s
counsel, the State introduced the testimony of Detective Jeff Gibson, of the El
Paso Sheriff=s
Department.  Detective Gibson testified
that for the past ten years, he has been involved with the investigation of
gang activity.  He also works closely
with the FBI task force on gang activity and has published several documents
regarding his findings.  Detective Gibson
testified that he focuses on the Barrio Azteca gang.  He testified that Barrio Azteca is a prison
gang that operates both inside and outside the prison system.  The gang consists of only male members, some
of which are no longer in prison. 
According to Detective Gibson=s
testimony, the primary trade of the gang is the trafficking of narcotics,
primarily heroin.  He testified that the
heroin is often carried through at method known as body carrying.  He testified that females are often used to
help traffic the heroin, with the normal procedure being that the female hides
the heroin in her body cavity.  A male
member of the gang will usually accompany the female to ensure the drugs are
safely delivered.  Detective Gibson
testified that he was only familiar with the Appellant from reports and other
investigations.  After reviewing this
information, he was of the opinion that Appellant was a member of the Barrio
Azteca gang.  According to Detective
Gibson, Appellant had admitted to being a gang member on more than one
occasion, he had been arrested with other known gang members in criminal
offenses, and his tattoos identified him with Barrio Azteca.[5]

Appellant
did not testify at trial nor did he offer any supporting testimony.  After hearing 

all of the
evidence, the jury found the Appellant guilty of possession of a controlled
substance with the intent to deliver as charged by the indictment.  The trial court then sentenced the Appellant
to thirty-five years=
confinement.  The Appellant filed a
motion for new trial which was apparently overruled as an operation of
law.  Appellant now timely brings this
appeal.

Gang-Membership Testimony








In
Issue One, Appellant contends the trial court erred in admitting
gang-membership and extraneous offense evidence at trial because such evidence
was irrelevant and prejudicial.  At the
guilty/innocent phase of the trial, over Appellant=s
numerous objections, the trial judge allowed expert testimony regarding
Appellant=s alleged
affiliation with the prison gang known as Barrio Azteca.  The State contends that this evidence was
properly admitted under Tex.R.Evid.
404(b) to prove the Appellant=s
motive, plan, intent, and knowledge of the crime.

In
determining whether a trial court erred in admitting evidence, we apply an
abuse of discretion standard for review. 
Mozon v. State, 991 S.W.2d 841, 846-47 (Tex.Crim.App. 1999); Green
v. State, 934 S.W.2d 92, 101-02 (Tex.Crim.App. 1996).  A trial court is found to have abused its
discretion when its decision is so clearly wrong as to lie outside that zone
within which reasonable persons might disagree. 
Montgomery v. State, 810 S.W.2d 372, 391 (Tex.Crim.App. 1991)(Op.
on reh=g).  Absent such a finding, the trial court=s ruling on the admission of evidence
will not be reversed.  Green, 934
S.W.2d at 101-02.








In
order for Rule 404 evidence to be admissible, it must be relevant.  See Tex.R.Evid.
402.  Our first determination then must
be whether the gang affiliation evidence is relevant under Texas Rule of
Evidence 401.  Evidence is relevant if it
has Aany
tendency to make the existence of any fact that is of consequence to the
determination of the action more probable or less probable than it would be
without the evidence.@  Tex.R.Evid.
401.  Contrary to Appellant=s argument, the gang-membership
evidence was specifically linked to the case and was not used as character
conformity evidence.  Detective Majerczyk=s testimony about Appellant=s affiliation with the Barrio Azteca
gang and his testimony regarding Barrio Azteca=s
trade being the trafficking of heroin, primarily by using a female=s body cavity to transport the
contraband, and having that female accompanied by a gang member, was relevant
to the offense.  We find that it was
within the zone of reasonable disagreement for the trial court to find the gang
membership evidence relevant.  See
Green, 934 S.W.2d at 101-02.

We
now turn to consider whether the evidence was admissible under Rule
404(b).  Texas Rule of Evidence 404(b)
reads:

(b)        Other Crimes, Wrongs, or Acts.  Evidence of other crimes, wrongs or acts is
not admissible to prove the character of a person in order to show action in
conformity therewith.  It may, however,
be admissible for other purposes, such as proof of motive, opportunity, intent,
preparation, plan, knowledge, identity, or absence of mistake or accident,
provided that upon timely request by the accused in a criminal case, reasonable
notice is given in advance of trial of intent to introduce in the State=s case-in-chief such evidence other
than that arising in the same transaction. 


 

Tex.R.Evid. 404(b).








Under
Rule 404(b), however, same transaction contextual evidence is admissible Aonly to the extent that it is necessary
to the jury=s
understanding of the offense.@  Pondexter v. State, 942 S.W.2d 577,
584 (Tex.Crim.App. 1996), quoting England v. State, 887 S.W.2d 902, 915
(Tex.Crim.App. 1994).  It is admissible
only when the offense would make little or no sense without also bringing in
the same transaction evidence.  Id.  The conduct must be blended or connected to
the act for which the defendant is being tried so that they form an indivisible
criminal transaction, such that full proof of one could not be given without
showing the other.  Mayes v. State,
816 S.W.2d 79, 86 n.4 (Tex.Crim.App. 1991). 
Same transaction contextual evidence is admissible as an exception under
Rule 404(b) where such evidence is necessary to the jury=s
understanding of the charged offense.  Nelson
v. State, 864 S.W.2d 496, 498 (Tex.Crim.App. 1993); Camacho v. State,
864 S.W.2d 524, 532 (Tex.Crim.App. 1993). 
It has long been held that the jury is entitled to know all relevant
surrounding facts and circumstances of the charged offense; an offense is not
tried in a vacuum.  Pondexter, 942
S.W.2d at 584, citing Moreno v. State, 721 S.W.2d 295, 301
(Tex.Crim.App. 1986).  The evidence is
not admissible for the purpose of showing character conformity, but rather to
illuminate the nature of the crime alleged. 
Camacho, 864 S.W.2d at 532.

In
this case, evidence regarding Appellant=s
gang membership was interlaced with the offense.  Detective Gibson=s
testimony regarding Appellant=s
gang membership provided information essential to understanding the context of
the offense and the circumstances surrounding Appellant=s
involvement with Ms. Guerra.  Part of the
explanation included the practice of Barrio Azteca=s
trafficking of heroin in a female=s
body cavity and having that female accompanied by a member of the Azteca=s to ensure safe delivery of the
heroin.  Without such evidence, Appellant=s offense would have made little if any
sense; the offense=s
obscurity was eliminated with evidence that the Appellant was a gang member.

Furthermore,
at trial, the State went into an in depth explanation as to the purpose of the
evidence.  The State adamantly argued
that the purpose of introducing such evidence was to show motive, intent,
knowledge of the offense, and explicitly stated that the purpose of the
evidence was not to show Appellant=s
character.  We therefore find that the
evidence was admissible under Texas Rule of Evidence 404(b).

Appellant
additionally argues that the probative value of the evidence is substantially
outweighed by its prejudicial effect on the jury.  Appellant argues that evidence of Appellant=s bad character distracted the jury
from considering whether he was guilty of the crime charged.  In essence, Appellant argues that the
Appellant was convicted because he was a gang member. Appellant argues that
this is best demonstrated in the State=s
closing argument.  








A
Rule 403 balancing test includes, but is not limited to the following
factors:  (1) how probative is the
evidence; (2) the potential of the evidence to impress the jury in some
irrational, but nevertheless indelible way; (3) the time the proponent needs to
develop the evidence; and (4) the proponent=s
need for the evidence.  Reese v. State,
33 S.W.3d 238, 240-41 (Tex.Crim.App. 2000), citing Montgomery, 810
S.W.2d at 389-90.  However, after a
review of the record, we find the State=s
statement in its closing argument made it clear to the jury that the gang
evidence was being used to show motive, intent, and knowledge.  We find that the State did not inflame the
jury by mentioning the Appellant=s
gang membership.  While we acknowledge
that often times, society looks down upon gang members, and that this could
potentially affect the jury in an emotional way, we note that the evidence in
this case was necessary to provide the jury with a full account of the
offense.  As we have stated above, the
two crimes are so intertwined that the evidence of one is necessarily probative
of the other.  In light of this, we find
no abuse of discretion on the trial court=s
part in its application of Rule 403.  See
id.  We find no abuse of discretion
on the part of the trial court in admitting the evidence regarding Appellant=s gang membership, and therefore, we
overrule Issue One.

Motion to Quash Indictment








In
Issue Two, Appellant alleges the trial court erred in denying his motion to
quash the indictment on the basis that it did not provide the Appellant with
adequate notice of the nature of the accusation against him since it failed to
allege how the controlled substance was delivered.  Under the Tex.Health
& Safety Code Ann. '
481.002 (8)(Vernon Supp. 2004-05), delivery can be accomplished three different
ways, and Appellant contends that failure to specify which theory the State
would use failed to provide adequate notice of the charge against him as
required by the U.S. Const. amend.
VI and Tex.Const. art. I, ' 10.

In
relevant part, the indictment alleged that on or about November 3, 1999, the
Appellant,  Adid
then and there unlawfully, knowingly and intentionally possess, with intent
to deliver, a controlled substance, to-wit: 
HEROIN, having an aggregate weight, including adulterants or dilutants,
of 4 grams or more but less than 200 grams.@  (Emphasis added).  The indictment did not charge the Appellant
with the offense of delivery, but rather with Apossession,
with intent to deliver.@  As such, Appellant=s
reliance on Ferguson v. State, 622 S.W.2d 846 (Tex.Crim.App. 1981), to
support his argument fails since Ferguson is not on point.  Ferguson is distinguishable from the
case at hand because in that case, the indictment was for Aunlawfully, intentionally and knowingly
deliver@ a
controlled substance.  Ferguson,
622 S.W.2d at 849.  In this case, the
indictment was for possession with the intent to deliver.  In this case, the State was not required to
prove the particular method of delivery. 
Additionally, similar arguments have been rejected.  See Pitts v. State, 731 S.W.2d 687,
691 (Tex.App.--Houston [1st Dist.] 1987, pet. ref=d);
Gonzales v. State, 638 S.W.2d 41, 44 (Tex.App.--Houston [1st Dist.]
1982, pet. ref=d).  We therefore overrule Issue Two.

Legal Sufficiency

In
Issue Three, Appellant raises a legal insufficiency claim alleging that the
State failed to establish both that Appellant had control and knowledge of the
contraband.  








In
reviewing the legal sufficiency of the evidence, we must view the evidence in
the light most favorable to the verdict to determine whether any rational trier
of fact could have found the essential elements of the crime beyond a
reasonable doubt.  Jackson v. Virginia,
443 U.S. 307, 319, 99 S.Ct. 2781, 2788‑89, 61 L.Ed.2d 560, 573 (1979); Lacour
v. State, 8 S.W.3d 670, 671 (Tex.Crim.App. 2000).  The standard is the same for both direct and
circumstantial evidence cases.  King
v. State, 895 S.W.2d 701, 703 (Tex.Crim.App. 1995).  We must evaluate all of the evidence in the
record, whether it was admissible or inadmissible.  Wilson v. State, 7 S.W.3d 136, 141
(Tex.Crim.App. 1999); Johnson v. State, 967 S.W.2d 410, 412
(Tex.Crim.App. 1998).  We do not resolve
any conflict of fact, weigh any evidence, or evaluate the credibility of any
witnesses, as this was the function of the trier of fact.  See Adelman v. State, 828 S.W.2d 418,
421 (Tex.Crim.App. 1992); Matson v. State, 819 S.W.2d 839, 843
(Tex.Crim.App. 1991). Instead, our duty is to determine whether if both the
explicit and implicit findings of the trier of fact are rational by viewing all
the evidence admitted at trial in the light most favorable to the verdict.  See Adelman, 828 S.W.2d at 421‑22.  In doing so, any inconsistencies in the
evidence are resolved in favor of the verdict. 
Matson, 819 S.W.2d at 843.

Possession of a Controlled Substance








A
person commits the offense of possession of heroin if the person knowingly or
intentionally possesses the controlled substance.  See Tex.Health
& Safety Code Ann. ' 481.115(a)(Vernon
2003).  Possession is defined as Aactual care, custody, control, or
management.@  Tex.Health
& Safety Code Ann. '
481.002(38)(Vernon Supp. 2004-05).  To
support a conviction for unlawful possession of a controlled substance, the
State must prove that the accused (1) exercised actual care, custody, control,
and management over the contraband, and (2) the accused knew the substance he
possessed was contraband.  See Brown
v. State, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995); Menchaca v. State,
901 S.W.2d 640, 651 (Tex.App.--El Paso 1995, pet. ref=d). 
By either direct or circumstantial evidence, the State Amust establish, to the requisite level
of confidence, that the accused=s
connection with the drug was more than just fortuitous.@  Brown, 911 S.W.2d at 747.








When
the defendant is not in exclusive possession or control of the place where the
contraband is found, as in this case, the State must prove independent facts
and circumstances affirmatively linking the defendant to the contraband.  Hackleman v. State, 919 S.W.2d 440,
444 (Tex.App.--Austin 1996, pet. ref=d,
untimely filed).  An affirmative link
generates a reasonable inference that the accused knew of the contraband=s existence and exercised control over
it.  See Brown, 911 S.W.2d at 747;
Menchaca, 901 S.W.2d at 651. 
These affirmative links may include: (1) the contraband was in plain
view; (2) the contraband was conveniently accessible to the accused; (3) the
accused was the owner of the place where the contraband was found; (4) the
accused was the driver of the automobile in which the contraband was found; (5)
the contraband was found on the same side of the car seat as the accused was
sitting; (6) the place where the contraband was found was enclosed; (7) the
contraband emitted a strong odor; (8) paraphernalia to use the contraband was
in view of or found on the accused; (9) conduct by the accused indicated a
consciousness of guilt; (10) the accused had a special connection to the
contraband; (11) occupants of the automobile gave conflicting statements about
relevant matters; (12) the physical condition of the accused was compatible
with recent consumption of the contraband found in the car; (13) traces of the
contraband were found on the accused; (14) affirmative statements connect the
accused to the contraband; and (15) the accused possessed other contraband when
arrested.  See Nguyen v. State, 54
S.W.3d 49, 53 (Tex.App.--Texarkana 2001, pet. ref=d);
Jones v. State, 963 S.W.2d 826, 830 (Tex.App.--Texarkana 1998, pet. ref=d); De La Paz v. State, 901
S.W.2d 571, 583‑84 (Tex.App.--El Paso 1995, pet. ref=d). 
However, there is no set formula of facts necessary to support an
inference of knowing possession.  Hyett
v. State, 58 S.W.3d 826, 830 (Tex.App.--Houston [14th Dist.] 2001, pet. ref=d). 
Rather, affirmative links are established by a totality of the
circumstances.  Hyett, 58 S.W.3d
at 830.  The number of factors present is
less important than the logical force the factors have in establishing the
elements of the offense.  Hurtado v.
State, 881 S.W.2d 738, 743 (Tex.App.--Houston [1st Dist.] 1994, pet. ref=d).

Inspector
San Roman indicated that the Appellant appeared nervous, he was shifting in his
seat, and his voice was first loud and then if became soft.  Due to all those factors, Inspector San Roman
testified that he became suspicious and sent the vehicle to the secondary
inspection booth.  The jury may have
rationally inferred from this evidence that Appellant=s
knowledge of the contraband was the cause of his nervousness.  Detective Majerczyk indicated that without
having questioned the Appellant or mentioned to him where the heroin was found,
Appellant told him that he could not be arrested because Ms. Guerra was the
person in possession of the contraband. 
The jury could have inferred from this that the Appellant had knowledge
of the  contraband.  There was also testimony from Detective
Gibson regarding Appellant=s
gang membership with Barrio Azteca and the gang=s
common method used in trafficking the narcotics, which matched the
circumstances in this case.  The jury was
shown photographs of Appellant=s
arms, which had track marks on them, which Detective Majerczyk testified were
an indicator of him being a drug user. 
Given the evidence presented at trial, we believe that a rational trier
of fact could easily have inferred that Appellant exercised care, custody, and
control of the contraband.  Viewing the
evidence in the light most favorable to the verdict, we conclude the evidence
is legally sufficient to affirmatively link the Appellant to the heroin and to
sustain the conviction.  We therefore
overrule Issue Three.








In
Issue Four, Appellant argues the trial court error in admitting hearsay
evidence.   Specifically, Appellant
complains the testimony provided by Detective Majerczyk indicating that he
responded to the Paso Del Norte Bridge on the day in question in reference to a
Abe on the lookout@ bulletin, which he gave to U.S.
Customs based on information provided to him by an anonymous tip.  The State contends that under the law of the
case doctrine, this Court previously addressed this issue and as such, it
should not be revisited.  See Howlett
v. State, 994 S.W.2d 663, 666 (Tex.Crim.App. 1999).  We agree with the State=s contention.  

Under
the doctrine known as law of the case, an appellate court=s resolution of a question of law in a
previous appeal of the same case will govern the disposition of the same issue
when raised in a subsequent appeal.  Id.
at 666.  This court made doctrine is
designed to promote judicial consistency and efficiency that eliminates the
need for appellate courts to prepare opinions discussing previously resolved
matters.  Id.  Under this doctrine, trial courts are assured
that they may rely on an appellate court=s
disposition of an issue in the case they are presiding over and gives the trial
courts an incentive to follow those decisions closely.  See id.

As
is pointed out in the State=s
brief, and acknowledged in the Appellant=s
brief, this Court has already decided on this issue.  In Ex Parte Ojeda, 08-01-00084-CR,
2002 WL 27107, *3 (Tex.App.-- El Paso January 10, 2002, pet. ref=d)(not designated for publication),
this Court found the same testimony complained-of here, admissible.  In that opinion, we stated, 

Here the evidence was
not being used to prove that Majerczyk had received information about relator
and to thereby affirmatively establish relator=s
guilt.  Instead, the evidence was
intended to provide the circumstances of Majerczyk=s
involvement with the case.  The evidence
that was being requested was to provide context for Majerczyk=s presence at the bridge and to explain
the course of events of the evening.

 

Ex Parte Ojeda,
2002 WL 27107 at *3.








We
find that Appellant=s
argument is the same today as it was in Ex Parte Ojeda.  Our finding today is the same as before.  See id.  We overrule Issue Four.

We
affirm the trial court=s
judgment.

 

 

September
24, 2004

DAVID WELLINGTON
CHEW, Justice

 

Before Panel No. 2

Barajas, C.J., McClure, and Chew,
JJ.

 

(Do Not Publish)











[1]
He asked her for her citizenship and if she was bringing anything over from
Mexico.  





[2]
He testified that the reasons for sending the vehicle to the secondary
inspection booth were Appellant=s
demeanor and the fact that the names matched those on the bulletin.  He further testified that had there been no
bulletin, he still would have sent the vehicle to the secondary inspection
booth.





[3]
Inspector Frazier also testified that she took a declaration from Ms. Guerra,
but does not provide the context of that declaration in her testimony.  





[4]
On cross-examination, Appellant=s
counsel requested the name of the confidential informant to be released arguing
that the State under Rule 508B had opened the door because they introduced the
testimony.  After a lengthy discussion
outside of the jury=s
presence, the trial court denied Appellant=s
request.





[5]
Introduced into evidence as State=s
Exhibits 25 and 26 were photographs of Appellant=s
tattoos on his arms and right side of his chest.  The first photograph showed a tattoo of a
band with the letters BA.  The second
photograph contained a symbol which Detective Gibson testified was an Aztec
symbol for eternal war.  The third
photograph was an Aztec Indian=s
head.  Detective Gibson testified that
based on his experience and training, the tattoo of the band with the letters
BA were a symbol for the name Barrio Azteca. 
He then testified that the other two tattoos alone did not indicate a
specific prison gang, but rather were a point of pride for people with an Aztec
descendent.  However, combined with the
BA tattoo, they strongly support the conclusion that the Appellant is a member
of the Barrio Azteca gang.  Furthermore,
he testified that someone who was not affiliated with Barrio Azteca, but that
had the tattoos on his body, if seen by an Azteca gang member, would be beaten
and then given a chance to remove or cover the tattoo.  If they did not, then Detective Gibson
testified that they would be beaten again and possible even killed.