11th Court of Appeals
Eastland, Texas
Opinion
 
Morris Landon Johnson, II 
            Appellant
Vs.            No. 11-04-00047-CR -- Appeal from Erath County
State of Texas 
            Appellee
 
            The jury convicted appellant, Morris Landon Johnson, II, of the offense of possession of
methamphetamine in the amount of 4 grams or more but less than 200 grams. The jury assessed
punishment at 20 years confinement and a $5,000 fine. In a single issue, appellant challenges the
sufficiency of the evidence to support his conviction. We affirm.
Background Facts
            Appellant was charged with two possession of methamphetamine offenses, both occurring
on April 1, 2003. In Cause No. 11,747, the indictment charged that appellant intentionally and
knowingly possessed methamphetamine in an amount of one gram or more but less than four grams. 
In Cause No. 11,748, the indictment charged that appellant intentionally and knowingly possessed
methamphetamine in an amount of 4 grams or more but less than 200 grams. Cause No. 11,747
arose out of an incident that occurred during the morning of April 1, 2003. Appellant pleaded guilty
in Cause No. 11,747, and the jury assessed punishment at 10 years confinement. Appellant does not
appeal from his conviction in Cause No. 11,747. Cause No. 11,748 arose out of an incident that
occurred during the afternoon of April 1, 2003. Appellant appeals from his conviction in Cause No.
11,748.
Summary of the Evidence
            The State called six witnesses at the guilt/innocence phase of the trial: (1) Curtis Lee Dees,
an officer with the Stephenville Police Department; (2) Jeffrey David Koplin, an officer with the
Stephenville Police Department; (3) Holly Bays, a detective with the Stephenville Police Department
assigned to the S.T.O.P. Narcotics Task Force (Task Force); (4) Jay Stubbs, a deputy with the
Johnson County Sheriff’s Office assigned to the Task Force; (5) Chris Youngkin, a criminalist with
the Texas Department of Public Safety Crime Laboratory in Garland; and (6) William L. Todsen,
a criminalist with the Texas Department of Public Safety Field Crime Laboratory in Abilene.
Appellant called two witnesses at the guilt/innocence phase of the trial: (1) Melissa Beth Horton; and
(2) appellant.
            Officer Dees testified that, during the morning of April 1, 2003, he and Officer Koplin
arrested appellant for outstanding DPS warrants. Officer Dees searched appellant for weapons and
contraband and found a plastic bag containing a white substance in the right front pocket of
appellant’s blue jeans. Officer Dees thought that the bag contained methamphetamine. Appellant
told him that the substance was MSM, which was a product for headaches. Officer Dees took
appellant to the county jail in connection with the DPS warrants. Field tests on the substance found
in appellant’s pocket revealed that it was methamphetamine. Officer Dees sent the substance to the
DPS laboratory in Abilene for further testing.
            Officer Dees and Officer Koplin obtained a felony warrant for appellant’s arrest in
connection with the methamphetamine. They went to the jail to serve appellant with the warrant,
but appellant had already been released from the jail. Officer Dees and Officer Koplin went to
appellant’s father’s house looking for appellant. Appellant’s father told them that appellant had gone
to Horton’s house to return her vehicle to her. Officer Dees and Officer Koplin went to Horton’s
house at 1086 West Oak Street and saw Horton’s vehicle parked at the house. Officer Coots also
went to the house.
            Officer Dees and Officer Koplin went to the front door of Horton’s house. Officer Coots
went to the back of the house. Officer Dees and Officer Koplin could hear several people talking
and laughing inside the house. When they knocked on the door, it got quiet inside; and then the
officers heard shuffling around and a lot of activity going on inside the house. Horton opened the
door, told the officers that appellant was inside the house, and let Officer Dees inside the house.
Officer Dees looked to his left and saw appellant sitting on a couch with two other subjects. Officer
Dees arrested appellant for the methamphetamine warrant.
            Officer Dees looked around the room when he placed appellant under arrest. He saw drug
paraphernalia on a small table in the room, including syringes and two spoons containing a white
residue. Officer Dees believed that the spoons had been used to cook methamphetamine and that
the syringes had been used to inject the cooked methamphetamine into the body. Appellant was
probably within five to eight feet of the drug paraphernalia. Officer Dees took appellant to his patrol
car. Based on the drug paraphernalia that he had seen, Officer Dees asked Horton for consent to
search the house. Horton denied consent. Officer Dees requested Detective Bays to obtain a search
warrant for the house. Officer Dees said that Angela Babkowski, Harold Nichols, Jerry Stewart,
Christopher Mayhall, Amanda Carpenter, and Shawn Brooks were also present inside the house. 
The officers handcuffed each of the persons and took them to the front yard to secure the house until
Detective Bays arrived with a search warrant. Members of the Task Force conducted the search of
the house.
            Officer Koplin testified that he and Officer Dees arrested appellant for outstanding DPS
warrants during the morning of April 1. At that time, Officer Koplin noticed several track marks on
appellant’s arms. Officer Koplin believed that the track marks were caused by the injection of a
needle into the vein. Officer Koplin also testified about appellant’s arrest at Horton’s house. When
he and Officer Dees got to the front door, they could hear several voices and laughter from inside
the house. When they knocked on the door, it got quiet inside the house; and then they could hear
scuffling from inside the house. About a minute later, Horton answered the door. She told the
officers that appellant was inside. The officers followed Horton inside the house. Officer Koplin
saw appellant sitting on a sofa with two other subjects. Officer Koplin saw cook spoons and other
drug paraphernalia on a table in the room where appellant was sitting. Officer Dees took appellant
to the patrol car, and Officer Koplin stayed in the house with the other people who were present. The
officers secured the house until Detective Bays arrived with the search warrant.
            Detective Bays testified that she obtained the search warrant for Horton’s house and
participated in the search. She seized and took possession of the physical evidence that was located
in the house. Other Task Force officers also participated in the search. Detective Bays took
photographs of the house and the contraband found during the search. The house had an open living
room area, one bedroom (Horton’s room), another room that had been converted to a second
bedroom (identified as Courtney’s room), a bathroom, a kitchen, and a hallway. Appellant had been
sitting on a couch in Courtney’s room before he was arrested. The vast majority of contraband
seized during the search came out of Courtney’s room, including a blue box with syringes in it,
digital scales with methamphetamine on them, a Coke can with a marihuana roach on top of it,
spoons with methamphetamine residue in them, other syringes, and bags to store drugs. The scales
were on a pillow in the middle of the room and had a white substance on them. The white substance
was not stuck to the scales. It was a loose, powdery-type substance. The scales would have had to
have been set down on the pillow for the substance to stay on the scales. Detective Bays took the
substance off of the scales, packaged it, and sent it to the laboratory for testing. The Task Force
officers also found syringes and a bag of methamphetamine under a mattress in Horton’s bedroom.
In the living room, they found a syringe on the couch, a firebox containing a bag with syringes, a
cook spoon and a needle in the couch cushions, and a bag of methamphetamine just inside the front
door of the house. Detective Bays sent the contraband that they seized to the DPS laboratory for
testing. The testing revealed methamphetamine and a marihuana roach.
            Detective Bays knew that Horton’s house was frequented by drug users and traffickers. She
described the house as a crack house or a place to go to buy or use dope.
            Deputy Stubbs provided chain of custody testimony about the drug exhibits that Detective
Bays seized from Horton’s house.
            Youngkin examined the drugs that Detective Bays sent to the DPS laboratory for testing.
Youngkin tested five substances. Four of the substances contained methamphetamine and weighed,
including adulterants and dilutants, as follows: (1) .46 grams; (2) .03 grams; (3) .01 grams; and (4)
3.59 grams. The other substance was .08 grams of marihuana. The aggregate weight of all of the
methamphetamine was 4.09 grams. The evidence established: (1) that the .46 grams of
methamphetamine came from the bag that was found just inside the front door of the house; (2) that
the .03 grams of methamphetamine came from a spoon that was found on a dresser in Courtney’s
room; (3) that the .01 grams of methamphetamine came from the scales that were found in
Courtney’s room; and (4) that the 3.59 grams of methamphetamine came from the bag that was
found under the mattress in Horton’s bedroom.
            Todsen testified that he tested the substance that Officer Dees sent to the DPS laboratory in
Abilene for testing. The substance weighed 1.44 grams and contained methamphetamine.
            Horton testified that she and appellant had been pretty good friends for years. Horton
described her house as a dope house. Spoons with dope and other various drug paraphernalia were
present all over the house. The house was very messy and had trash all over the floor.
            Horton testified about the April 1, 2003, incident. Nichols was a dope dealer and brought
close to a gram of methamphetamine to Horton’s house on April 1. On the same day, Brooks
brought three to four grams of methamphetamine with him. Brooks tried to sell some of his
methamphetamine while he was at the house. Brooks was also sharing some of the
methamphetamine. Nichols and Brooks went into the middle bedroom (Courtney’s room) and
started mixing up a shot of methamphetamine. Appellant had borrowed Horton’s vehicle. Appellant
brought Horton’s vehicle to her and then waited for her to give him a ride home. While he waited,
appellant sat on a couch in Courtney’s room. The police officers came to the house looking for
appellant. At about that time, Brooks and Stewart came out of the back bedroom (Horton’s room).
The officers arrested appellant and took everyone out into the front yard. Horton did not believe that
appellant possessed any methamphetamine while he was at her house on April 1.
            Appellant testified that he had methamphetamine in his pocket when he was arrested during
the morning of April 1, 2003. Appellant and Horton had been friends for years. Appellant went to
Horton’s house during the afternoon of April 1, and then he waited for Horton to give him a ride
home. Appellant went into Courtney’s room and sat down. He saw some spoons on the dresser
when he walked into the room. Nichols and Carpenter were in the room with him. The house
smelled like trash and was a wreck. Appellant said that he did not know about the methamphetamine
that was in the back bedroom (Horton’s room). Appellant knew that you could get dope at Horton’s
house. Appellant said that a lot of people were doing drugs at Horton’s house on the date of the
incident. Appellant said that, when he was being arrested, he saw Brooks pull scales out of his
pocket and throw them. The scales landed on a pillow in Courtney’s room, and the
methamphetamine stuck on top of the scales.Sufficiency of the Evidence at Trial
            Appellant contends that the evidence is legally and factually insufficient to support his
conviction for possession of methamphetamine. Specifically, appellant contends that the evidence
is insufficient to link him to the 3.59 grams of methamphetamine that was found under the mattress
in the back bedroom. In order to determine if the evidence is legally sufficient, we must review all
of the evidence in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307 (1979); Jackson v. State, 17 S.W.3d 664 (Tex.Cr.App.2000). In order to
determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light
and determine whether the evidence supporting guilt is so weak that the verdict is clearly wrong and
manifestly unjust or whether the evidence contrary to the verdict is so strong that the beyond-a-reasonable-doubt burden of proof could not have been met. Zuniga v. State, 144 S.W.3d 477 (Tex.
Cr.App.2004); Ross v. State, 133 S.W.3d 618 (Tex.Cr.App.2004); Vasquez v. State, 67 S.W.3d 229,
236 (Tex.Cr.App.2002); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922
S.W.2d 126 (Tex.Cr.App.1996). We review the fact finder’s weighing of the evidence and cannot
substitute our judgment for that of the fact finder. Cain v. State, supra; Clewis v. State, supra. Due
deference must be given to the jury’s determination, particularly concerning the weight and
credibility of the evidence. Johnson v. State, 23 S.W.3d 1 (Tex.Cr.App.2000); Jones v. State, 944
S.W.2d 642 (Tex.Cr.App.1996), cert. den’d, 522 U.S. 832 (1997). This court has the authority to
disagree with the fact finder’s determination “only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice.” Johnson v. State, supra at 9.
            To prove unlawful possession of a controlled substance, the State must prove that (1) the
accused exercised control, management, or care over the substance and (2) the accused knew the
matter possessed was contraband. Poindexter v. State, 153 S.W.3d 402, 405 (Tex.Cr.App.2005). 
When, as in this case, the accused was not in exclusive possession of the place where the contraband
was found, the evidence must affirmatively link the accused to the contraband. Brown v. State, 911
S.W.2d 744, 748 (Tex.Cr.App.1995). The “affirmative links rule” is designed to protect the innocent
bystander from conviction based solely upon his fortuitous proximity to someone else’s drugs. 
Poindexter v. State, supra at 406.
            In deciding whether the evidence is sufficient to link the defendant to contraband, the trier
of fact is the exclusive judge of the credibility of the witnesses and the weight to be given to their
testimony. Poindexter v. State, supra at 406. The factors that establish affirmative links between
an accused and contraband include (1) whether the accused was present when the contraband was
discovered; (2) whether the contraband was in plain view; (3) whether the accused was in close
proximity to and had access to the contraband; (4) whether the accused was under the influence of
narcotics when arrested; (5) whether the accused possessed other contraband when arrested; (6)
whether the accused made incriminating statements when arrested; (7) whether the accused
attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of
the contraband; (10) whether other contraband or other drug paraphernalia was present; (11) whether
the place where the drugs were found was enclosed; and (12) whether the accused owned or had the
right to possess the place where the drugs were found. See Swarb v. State, 125 S.W.3d 672, 684
(Tex.App. - Houston [1st Dist.] 2003, pet’n dism’d); Hyett v. State, 58 S.W.3d 826, 830 (Tex.App. -
Houston [14th Dist.] 2001, pet’n ref’d). The number of factors present is of less import than the
“logical force” or the degree to which the factors, alone or in combination, tend to affirmatively link
the accused to the contraband. Hurtado v. State, 881 S.W.2d 738, 743 (Tex.App. - Houston [1st
Dist.] 1994, pet’n ref’d)(citing Whitworth v. State, 808 S.W.2d 566, 569 (Tex.App. - Austin 1991,
pet’n ref’d). Each case must be reviewed on its own facts for evidence of affirmative links. 
Whitworth v. State, supra at 569.
            The evidence established several affirmative links between appellant and the
methamphetamine. Appellant was present in the house when the officers arrived and discovered
methamphetamine and drug paraphernalia in the house. Appellant said that a lot of people were
doing drugs at the house. Appellant was sitting on a couch in Courtney’s room when the officers
arrived. Methamphetamine and drug paraphernalia were in plain view in Courtney’s room.
Appellant was about five to eight feet away from the contraband. The officers secured the house
before the task force members conducted the search. The scales containing methamphetamine were
on the pillow on the floor in Courtney’s room. Detective Bays said that the officers found the vast
majority of the contraband in Courtney’s room. Horton said that Nichols and Brooks had mixed up
a shot of methamphetamine in Courtney’s room.
            The evidence also established that there was drug paraphernalia all over the house. The
house was a known drug house, and appellant knew that he could get drugs at Horton’s house.
Appellant had access to all of Horton’s house. Horton did not answer the door until about a minute
after the officers knocked on the door. The officers heard a lot of shuffling and activity going on in
the house after they knocked. The jury may have believed that someone hid the bag of
methamphetamine under the mattress in Horton’s bedroom after the police knocked.
            The evidence was legally and factually sufficient to affirmatively link appellant to the
methamphetamine. Appellant’s issue is overruled.
This Court’s Ruling
            The judgment of the trial court is affirmed. 
                 
                                                                                                TERRY McCALL
                                                                                                JUSTICE
 
June 2, 2005
Do not publish. See TEX.R.APP.P. 47.2(b).
Panel consists of: Arnot, C.J., and
Wright, J., and McCall, J.