**Affirmed and Memorandum Opinion filed January 12, 2012.**



In The

# Fourteenth Court of Appeals

## NO. 14-10-01043-CR

### TERRENCE RHODETRIC PHILLIPS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1216069**

## MEMORANDUM OPINION

Appellant Terrence Rhodetric Phillips appeals his conviction for possession of a controlled substance. He challenges the sufficiency of the evidence to support his conviction, complains of evidentiary rulings, and asserts that he received ineffective assistance of counsel at trial. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the felony offense of possession of a controlled substance, namely cocaine, weighing more than four grams and less than two hundred grams. The indictment also contained an allegation that appellant used or

exhibited a deadly weapon, a firearm, during the commission of and immediate flight from the charged offense. The indictment contained two enhancement paragraphs. Appellant pleaded "not guilty" to the charged offense and "true" to the two enhancement paragraphs.

At trial, an officer with the narcotics division of the police department testified that he had received information from a known, credible, and reliable informant that appellant was selling crack cocaine from a specific apartment, unit 4, in an apartment complex located in a high-crime area. The officer believed that appellant lived in unit 4 with a woman, and the officer had observed appellant entering or exiting that unit twice. With this information, the officer organized a "controlled buy" at the apartment, in which the officer sent the informant to the apartment to purchase narcotics so that the officer could verify the information he had received. During this transaction, the informant entered unit 4 with "city money," purchased narcotics with the money, and returned to the awaiting officer with a substance that later tested positive for crack cocaine. Afterwards, the informant described the individual from whom he purchased the narcotics during the transaction; the description matched appellant's appearance. The officer included the description, as relayed to him by the informant, in a probable-cause affidavit, and then obtained a search warrant for the apartment.

The following day, before executing the search warrant at unit 4, officers waited at a nearby fire station until they saw appellant exit the apartment. According to one officer, appellant posed a threat to officers, and the officers did not want to execute the warrant until after appellant had exited the apartment. Officers approached appellant and detained him at a nearby store. Other officers then went to the apartment.

When they arrived at the apartment, a woman opened the door and allowed the officers to enter. Officers believed that the woman was appellant's girlfriend. The officers explained that they were looking for narcotics, and the woman directed the officers to a closet inside the apartment's master bedroom. The closet contained men's

and women's clothing. The men's clothing was sized extra, extra large and would have fit appellant's build.

Inside the closet, officers located what appeared to be two "cookies" of crack cocaine and eight bags containing what appeared to be marijuana. Officers found two loaded firearms in the bedroom under a mattress. Also inside the bedroom, officers found a receipt for a money order, dated the previous month, bearing appellant's name, but reflecting appellant's address as that of a neighboring apartment. Officers also found letters written by appellant to the woman who answered the door. In the letters, which appellant penned from county jail, appellant expressed a desire to have children with the woman. These letters reflected the woman's address as that of the neighboring apartment. Officers arrested the woman in connection with the investigation.

The record reflects that the substances found in the closet later tested positive for cocaine; one piece of cocaine weighed approximately 38.3 grams, and the other one weighed 2.4 grams. Other tests confirmed that the substance found in the bags to be marijuana totaling 3.3 ounces. According to one officer's trial testimony, forty grams of cocaine is worth about $1000 and is not considered an amount intended for personal use. Another officer testified that a "cookie" of crack cocaine could be cut into smaller pieces and sold for roughly $20 per piece. This officer opined that, based on the packaging, the marijuana was intended for sale and distribution, and not for personal use.

The jury found appellant guilty as charged. The jury determined in a special issue that appellant did not use or exhibit a deadly weapon. After finding the enhancements to be true, the trial court sentenced appellant to thirty-five years' confinement. Appellant now challenges his conviction, raising three issues on appeal.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, appellant claims the evidence is insufficient to support his conviction. In evaluating a sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000).

The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person commits the second-degree felony offense of possession of a controlled substance if that person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, and the substance was not prescribed by a practitioner, and when it weighs more than four grams and less than two hundred grams. *See* Tex. Health & Safety Code Ann. § 481.115(a), (d) (West 2010). Cocaine is considered a controlled substance listed in Penalty Group 1. *Id.* § 481.102(3)(D) (West 2010).

"Possession" is defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West 2011); TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West 2010). To prove unlawful possession of a controlled substance, the State must establish that (1) the accused exercised care, control, or management over the contraband, and (2) knew the substance was contraband. *Poindexter v. State*, 153 S.W.3d 402, 405 (Tex. Crim. App. 2005). The elements of possession may be proven through direct or circumstantial evidence, although the evidence must establish that the accused's connection with the substance was more than fortuitous. *Id.* at 405–06. Evidence must

4

link the accused to the offense so that one reasonably may infer that the accused knew of the contraband's existence and exercised control over it. *Hyett v. State*, 58 S.W.3d 826, 830 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd). Courts have identified a non-exhaustive list of factors that may help to show an accused's affirmative links to a controlled substance, including (1) the accused's presence when a search is conducted, (2) the contraband is in plain view, (3) the accused's proximity to and accessibility of the narcotics, (4) the accused was under the influence of narcotics when arrested, (5) other contraband or narcotics were found in the accused's possession, (6) any incriminating statements the accused made when arrested, (7) furtive gestures or attempts to flee by the accused, (8) any odor of contraband, (9) the presence of other contraband or paraphernalia, (10) the accused's ownership or right to possess the place where the narcotics were found, (11) whether the place where the narcotics were found was enclosed, (12) whether the accused was found with a large amount of cash, and (13) whether the accused's conduct indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). Additionally, a large quantity of contraband may be a factor affirmatively linking appellant to the contraband. *See Olivarez v. State*, 171 S.W.3d 283, 292 (Tex. App.—Houston [14th Dist.] 2005, no pet.). No set formula necessitates a finding of an affirmative link sufficient to support an inference of knowing possession; affirmative links are established by the totality of the circumstances. *See Hyett*, 58 S.W.3d at 830. The number of factors present is not as important as the logical force the factors created to prove the accused knowingly possessed the controlled substance. *Robertson v. State*, 80 S.W.3d 730, 735 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd). In the case under review, we focus on factors three, five, and ten, among others, as establishing affirmative links between appellant and the controlled substance.

Appellant first asserts there is no evidence that the informant procured cocaine from appellant during the controlled buy because the officer who organized the controlled buy had no information about the occupants inside the apartment. Contrary to appellant's

5

assertion, the record reflects that, after conducting the controlled buy, the confidential informant, whom officers believed was credible and reliable, (1) identified appellant as the person who sold him the narcotics from unit 4 one day before appellant's arrest and (2) provided a description of appellant to the officer. *See Cooper v. State*, 852 S.W.2d 678, 682 (Tex. App.—Houston [14th Dist.] 1993, pet. ref'd) (considering "the most telling evidence" of affirmative link between accused and narcotics was an informant's tip that he purchased narcotics from the accused at a particular address two days before the accused's arrest at the same location). According to the officer's testimony, the informant's description matched appellant's appearance, a fact the officer knew firsthand from observing appellant enter and exit the apartment twice before. The officer stated that he included this description in a probable-cause affidavit, which the officer used to procure the search warrant for the apartment. The informant told officers that he purchased narcotics from appellant at unit 4; the informant's tip was corroborated when officers discovered the narcotics inside that apartment. *See id.*

Appellant argues that the record contains very little evidence connecting him to the apartment. Specifically, appellant contends he had no control over the apartment, was not listed on the lease, and was not connected with the men's clothing found in the closet. The record reflects that the woman who opened the door for the officers admitted to them that she was a tenant in unit 4; no evidence suggests that appellant was listed as a tenant on a lease for that apartment. An officer testified that people with felony records generally cannot lease apartments, and these people commonly will live with a "significant other." According to the officer, this scenario is common at the particular apartment complex where unit 4 is located. Officers also testified that it is common for people to sell narcotics from the home of a boyfriend or girlfriend and to change residences frequently to avoid apprehension by law enforcement officers. Officers observed appellant at unit 4 several times, including sightings on two consecutive days: the day of the controlled buy and the next day, when officers arrested appellant. *See Cooper*, 852 S.W.2d at 681 (considering as one fact among others to support an

6

affirmative link of possession that an accused lived in a home based on the fact that officers had observed the accused entering and exiting the home on four consecutive days that officers conducted surveillance of the home). In the closet where they found the narcotics, officers saw men's clothing consistent with appellant's large size and build. *See Evans*, 202 S.W.3d at 164, 165 (noting a reasonable factfinder could have found, in part, that because men's clothing was found in the home with narcotics, affirmative link established an accused's possession of narcotics); *Cooper*, 852 S.W.2d at 681. Even though the clothing was not independently established as belonging to appellant, there was no other evidence that any other adult male might have lived or stayed in unit 4. *See Evans*, 202 S.W.3d at 164 n.21. Consequently, a reasonable inference exists that the large men's clothing belonged to appellant and that he lived in unit 4. *See id.* at 165. Inside the master bedroom of the apartment, officers also found a money-order receipt bearing appellant's name. *See id.* at 163, 165 (providing that affirmative link existed between an accused and cocaine based in part on the fact that the accused had mail, dated one month before, at the address where the narcotics were discovered). Even though he was not listed on the lease as a tenant, the fact that men's clothing in appellant's size, along with personal documents bearing appellant's name, were found inside the master bedroom, raised a reasonable inference that appellant lived and stayed in unit 4 with his girlfriend. *See id.* at 163–65 (concluding that evidence was sufficient to support a jury's finding that appellant exercised knowing possession of narcotics, in part because of affirmative link that of men's clothing and personal mail located where contraband was found).

Appellant claims the record contains no evidence indicating that he was in possession of the narcotics and that his mere presence at the apartment was not enough to link appellant to the contraband. Appellant notes that nothing about the packaging of the narcotics linked him to them, and there were no fingerprints or accomplice testimony connecting him to the contraband. The most telling evidence linking appellant to the narcotics was the confidential informant's tip that appellant sold narcotics from unit 4.

7

This evidence was later corroborated by the officers' discovery of narcotics and men's large-size clothing found in the same closet. *See id.* To the extent appellant suggests that the contraband belonged to the woman who lived in the apartment, control over contraband need not be exclusive, but can be jointly exercised by more than one person. *See Poindexter*, 153 S.W.3d at 412. The presence of appellant's personal items and documents inside the master bedroom and closet raised a reasonable inference that appellant had actual care, control, custody, and management over the items found in the closet of the master bedroom. *See Evans*, 202 S.W.3d at 163 (concluding that evidence was sufficient to support a jury's finding that appellant exercised knowing possession); *Cooper*, 852 S.W.2d at 682.

The logical force of the circumstantial evidence and the sum totality of the links is sufficient for a rational jury to have affirmatively linked appellant to the contraband and found beyond a reasonable doubt that appellant knew about the contraband's existence and exercised care, control, custody, and management over the contraband. *See Evans*, 202 S.W.3d at 166; *Cooper*, 852 S.W.2d at 682. We conclude the evidence is sufficient to support the jury's verdict. We overrule appellant's first issue.

### CHALLENGES TO ADMISSION OF EVIDENCE

In his second issue, appellant complains of the trial court's admission into evidence of an officer's testimony that implied appellant had a prior felony record, as reflected in the following exchange:

> [PROSECUTOR]: Officer, in your experience as a narcotics officer conducting narcotics arrests, is it uncommon for a man to deal drugs out of his girlfriend's apartment?
>
> [TRIAL COUNSEL]: Objection to speculation and relevance.
>
> [TRIAL JUDGE]: Overruled.
>
> [WITNESS]: No, it's not uncommon.
>
> [PROSECUTOR]: Why do people do that?
>
> [TRIAL COUNSEL]: Objection, speculation.

8

[TRIAL JUDGE]:  Overruled.

[TRIAL COUNSEL]:  May I be heard, Your Honor?

[TRIAL JUDGE]:  No.

[WITNESS]:  I've found out in the past individuals that may have felony records that cannot obtain an apartment—

[TRIAL COUNSEL]:  Objection to speculation.

[PROSECUTOR]:  Your Honor, this witness testified to his—

[TRIAL JUDGE]:  Overruled.

[WITNESS]:  —they cannot acquire an apartment and must find housing somewhere and usually they find it with their girlfriend or boyfriend.

On appeal, appellant complains that the officer's testimony was "nonresponsive" and contends that the testimony was a prejudicial disclosure of extraneous-offense evidence, which is inadmissible under Texas Rule of Evidence 404(b).  Thus, as a threshold issue we consider whether appellant has preserved these complaints for appellate review.

Although in the trial court appellant initially objected to relevance when the prosecutor posed the first question, appellant did not further pursue that objection, and instead objected only that the question called for speculation.  Consequently, the trial court was not put on notice of the complaint that the evidence constituted improper character or extraneous-offense evidence.  *See* Tex. R. App. P. 33.1.  Moreover, the officer was generally describing conduct of narcotics dealers; he did not specifically refer to appellant's extraneous-offense evidence.  The record does not reflect that appellant voiced any objection on Rule 404(b) grounds.  A relevancy objection does not preserve error under Rule 404 with respect to extraneous-offense evidence.  *See Medina v. State*, 7 S.W.3d 633, 643 (Tex. Crim. App. 1999).  Likewise, an objection to speculative evidence does not preserve error for a complaint of the admission of extraneous-offense evidence under Rule 404(b).  *See Phelps v. State*, 999 S.W.3d 512, 519 (Tex. App.—Eastland 1999, pet. ref'd).  An appellate contention must comport with the specific objection made at trial.  *See Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002).  An objection based on one legal theory at trial may not be used to support a complaint based on a

different legal theory on appeal. *See Brozton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App. 1995). Because appellant failed to voice his complaint regarding prejudicial and nonresponsive testimony pertaining to extraneous-offense evidence, he failed to preserve error and has thus waived that complaint. We overrule appellant's second issue.

### INEFFECTIVE-ASSISTANCE-OF-COUNSEL CLAIMS

In his third issue, appellant asserts that he received ineffective assistance of counsel because his trial counsel failed to preserve error as to the officer's "nonresponsive" testimony, as presented in appellant's second issue.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; Tex. Code Crim. Proc. art. 1.051 (West 2005). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance. *Strickland*, 466 U.S. at 688–92. Moreover, appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

In assessing appellant's ineffective-assistance complaint, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77

10

S.W.3d 828, 833 (Tex. Crim. App. 2002). If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd). The Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On such a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

On appeal, appellant asserts his trial counsel should have lodged "proper" objections at the "right" time to the officer's testimony that made reference to appellant's prior felony convictions. Appellant argues that had counsel made a timely request for an instruction to disregard the evidence, or obtained some other limiting instruction from the court, these measures would have cured the error.

There was no motion for new trial filed in this case. The record is silent as to trial counsel's strategy. In the face of a silent record, we apply a strong presumption that trial counsel was competent. *See Thompson*, 9 S.W.3d at 813. Even if we were to presume, without deciding, that appellant's trial counsel lodged incorrect objections as the result of deficient representation, appellant has failed to show that the outcome of trial would have been different, especially given that the officer did not actually testify that appellant was a convicted felon who was unable to lease an apartment. *See Strickland*, 466 U.S. at 688, 104 S. Ct. at 2065. Instead, the officer proffered a possible rationale for why a person might be living in an apartment without being listed as a tenant on a lease; the officer did not attribute those particular circumstances to appellant's living situation. We conclude appellant has failed to establish ineffective assistance of counsel. Appellant's third issue is overruled.

11

The trial court's judgment is affirmed.


/s/      Kem Thompson Frost
            Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — TEX. R. APP. P. 47.2(b).