

# IN THE
# TENTH COURT OF APPEALS

### No. 10-15-00123-CR

**DONNA MURRAY,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 13th District Court
Navarro County, Texas
Trial Court No. D35648-CR**

## MEMORANDUM OPINION

In four issues, appellant, Donna Jean Murray, challenges her conviction for unlawful possession of a controlled substance in an amount less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (West 2010). Specifically, Murray asserts that: (1) the evidence supporting her conviction is insufficient; and (2) the trial court erred in failing to provide her proposed instructions on possession, mistake of fact, and voluntary conduct. We affirm.

Murray was charged by indictment with the offense of unlawful possession of a controlled substance—methamphetamine—in an amount less than one gram. *See id.* A jury ultimately found Murray guilty of the charged offense, and the trial court sentenced her to twenty-three months' confinement in the State Jail Division of the Texas Department of Criminal Justice with a $1,000 fine. The trial court also certified Murray's right of appeal, and this appeal followed.

## II.   SUFFICIENCY OF THE EVIDENCE

In her first issue, Murray contends that the evidence supporting her conviction is insufficient. In particular, Murray argues that the State did not "prove, beyond a reasonable doubt, that [she] knowingly and intentionally possessed minute particles of methamphetamine collected and aggregated from four separate, distinct areas of [her] vehicle."

### A.  Standard of Review

In *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011), the Texas Court of Criminal Appeals expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt.

---

[1] As this is a memorandum opinion and the parties are familiar with the facts, we only recite those facts necessary to the disposition of the case. *See* TEX. R. APP. P. 47.1, 47.4.

> *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Id.*

Our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. Furthermore, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of the witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

The sufficiency of the evidence is measured by reference to the elements of the offense as defined by a hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). A hypothetically-correct jury charge does four

things: (1) accurately sets out the law; (2) is authorized by the indictment; (3) does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability; and (4) adequately describes the particular offense for which the defendant was tried. *Id.*

To prove unlawful possession of a controlled substance, the State must prove that: (1) the accused exercised control, management, or care over the substance; and (2) the accused knew the matter possessed was contraband. *Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2015). Possession is not required to be exclusive. *See Evans*, 202 S.W.3d at 162 n.12; *see also Sellers v. State*, No. 10-14-00226-CR, 2015 Tex. App. LEXIS 4702, at *4 (Tex. App.—Waco May 7, 2015, pet. ref'd) (mem. op., not designated for publication).

## B. Applicable Law

When the defendant is not in exclusive possession of the place where the controlled substance is found, then additional, independent facts and circumstances must link the defendant to the substance in such a way that it can reasonably be concluded that the defendant possessed the substance and had knowledge of it. *See Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Whether this evidence is direct or circumstantial, "it must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id.* 405-406 (quoting *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). Evidence that links the defendant to

the controlled substance suffices for proof that he possessed it knowingly. *Brown*, 911 S.W.2d at 747.

A link generates a reasonable inference that the defendant knew of the contraband's existence and exercised control over it. *See Brown*, 911 S.W.2d at 747; *see also Santiesteban-Pileta v. State*, 421 S.W.3d 9, 12 (Tex. App.—Waco 2013, pet. ref'd). Courts have identified the following factors that may link a defendant to a controlled substance: (1) the defendant's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the defendant's proximity to and the accessibility of the controlled substance; (4) whether the defendant was under the influence of a controlled substance when arrested; (5) whether the defendant possessed other contraband or controlled substances when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the controlled substance was found; (12) whether the location of the controlled substance was enclosed; (13) whether the defendant was found with a large amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *See Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). The number of factors present is not as important as the logical force the

factors create to prove the defendant knowingly possessed the controlled substance. *See*

*Black v. State*, 411 S.W.3d 25, 28-29 (Tex. App.—Houston [14th Dist.] 2013, no pet.).

## C. Discussion

Here, the evidence showed that officers with the Corsicana Police Department's narcotics division were familiar with Murray from prior drug investigations and that officers began to follow Murray when they noticed her vehicle and recalled that she had an active warrant. Apparently observing the officers' car, Murray pulled into an alley and stopped her vehicle. Detective Kenneth Dunagan approached Murray, asked her to step out of the vehicle, and informed her that she was being taken into custody based on an active warrant. Officers then conducted an inventory of Murray's vehicle and located crystals throughout the vehicle, including in the driver's seat that Murray had just vacated and in the driver's side floorboard. Laboratory tests later confirmed that the crystals were methamphetamine in an amount less than one gram.[2] Testimony at trial also revealed that Murray owned the vehicle where the methamphetamine was found; that Murray was the only person inside the vehicle at the time of the stop; that Murray's boyfriend, Robert Newland, was never in the vehicle without Murray; that Newland and Murray regularly used methamphetamine in the vehicle;[3] that Detective Dunagan seized

---

[2] Specifically, the lab report stated that the seized methamphetamine had a "[t]race net weight," which Department of Public Safety forensic analyst Lindsay Hatfield defined as being less than 0.01 grams. However, Detective Dunagan testified that additional methamphetamine crystals found inside Murray's vehicle were not tested by Hatfield because the crystals were used in field tests at the scene of the stop.

more than $8,000 that Murray had just withdrawn from her account at Chase Bank;[4] and that Detective Dunagan had a prior encounter with Murray where he found methamphetamine in the seat cushions of her vehicle. Officers did not find any other drug paraphernalia on Murray's person or inside the vehicle, nor did Murray attempt to flee or make any furtive gestures.

Based on our review of the record, we conclude that the evidence is sufficent to support the jury's finding that Murray possessed the methamphetamine found inside her vehicle. This conclusion is premised on the following: (1) trace amounts of methamphetamine were found in plain view inside Murray's vehicle, including on the driver's seat and floorboard; (2) Murray was the only person inside the vehicle at the time of the stop; (3) Newland testified that he regularly used methamphetamine with Murray inside the vehicle; (4) Newland denied riding in Murray's vehicle without Murray; (5) Murray was arrested with more than $8,000 in her possession;[5] (6) Detective Dunagan

---

[3] On cross-examination, Newland admitted to telling Murray's trial counsel that the methamphetamine found in the vehicle was his. However, he later contradicted himself when he stated that he did not know whose methamphetamine was in Murray's vehicle on the day in question because he "wasn't in her truck that day."

[4] On cross-examination, Detective Dunagan testified that Murray told him at the scene of the stop that the money was "for her lawyer." However, on re-direct examination, Detective Dunagan noted that he was skeptical of Murray's credibility because she was on probation for falsifying a drug test ordered by the trial court and for a felony drug case.

[5] The fact that Murray told officers that the money was for her lawyer was a fact issue for the jury to decide. *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991) (stating that it is within the province of the factfinder to judge the credibility of the witnesses); *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008) (noting that because the resolution of conflicting testimony is within the province of the factfinder, appellate courts must defer to the jury's resolution of conflicts in the evidence);

recounted that, in a prior encounter, Murray had methamphetamine in the seat cushions of her vehicle; and (7) Detective Dunagan noted on re-direct examination that he was skeptical of Murray's credibility because she was on probation for falsifying a drug test and for a felony drug case.

However, despite the foregoing evidence, Murray contends that the evidence is insufficient because the amount of drugs collected from her vehicle were "too small to be measured" and, thus, did not show knowing possession. Specifically, in support of her contention, Murray noted that the "visibility of the specks [of methamphetamine] was not plainly apparent" and that they were not "visible" or in plain view to be seen with the naked eye. First, Murray's contention is belied by the evidence adduced at trial. In particular, at the time of the stop, officers clearly saw small crystals that they believed to be methamphetamine inside Murray's truck. Officers collected the crystals in a plastic bag and submitted it for laboratory testing. Moreover, Lindsay Hatfield, a forensic scientist for the Department of Public Safety, testified that she was able to see, with the naked eye, a small amount of crystals in the bag obtained from officers.

---

*Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge."). There was testimony that Murray's credibility was suspect, and with its guilty verdict, it is entirely possible that the jury did not believe Murray's explanation for the large sum of money in her possession at the time of the arrest. Nevertheless, this is but one of many factors that link Murray to the contraband.

Second, under section 481.115(b) of the Texas Health and Safety Code, the State is not required to determine the amount of a controlled substance and the amount of adulterant and dilutant that constitute the mixture, but only must prove that the aggregate weight of the controlled substance mixture equals the alleged minimum weight. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b); *see also Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2005) ("Under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance *and* the amount of adulterant and dilutant that constitute the mixture. The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight." (internal citations omitted) (emphasis in original)). And perhaps more importantly, there is no requirement that a controlled substance be visible and measurable to support a conviction for possession of a controlled substance. *See Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995) (concluding that it is error to require a controlled substance to be visible to the naked eye to support conviction and noting that visibility is not an element of possession of a controlled substance); *see also King v. State*, 895 S.W.2d 701, 702-04 (Tex. Crim. App. 1995); *Muckleroy v. State*, 206 S.W.3d 746, 747 (Tex. App.—Texarkana 2006, pet. ref'd); *Hyett v. State*, 58 S.W.3d 826, 831 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Therefore, after review, we cannot say that Murray's connection to the methamphetamine was merely fortuitous. *See Poindexter*, 153 S.W.3d at 405-06. Rather, the evidence links Murray to the methamphetamine. *See Evans*, 202 S.W.3d at 162; *Poindexter*, 153 S.W.3d at 405; *Brown*, 911 S.W.2d at 747; *see also Black*, 411 S.W.3d at 28-29. Accordingly, viewing the evidence in the light most favorable to the jury's verdict, we hold that the evidence is sufficient to support Murray's conviction for unlawful possession of a controlled substance in an amount less than one gram. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(b); *see also Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Lucio*, 351 S.W.3d at 894. We overrule Murray's first issue.

### III.   THE JURY CHARGE

In her second, third, and fourth issues, Murray complains about the jury charge. As noted above, Murray believes that the trial court erred in failing to submit her proposed instructions on possession, mistake of fact, and voluntary conduct.

#### A. Applicable Law

In reviewing a jury-charge issue, an appellate court's first duty is to determine whether error exists in the jury charge. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996). If error is found, the appellate court must analyze that error for harm. *Middleton v. State*, 125 S.W.3d 450, 453-54 (Tex. Crim. App. 2003). If an error was properly preserved by objection, reversal will be necessary if the error is not harmless. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985). Conversely, if error was not preserved

at trial by a proper objection, a reversal will be granted only if the error presents egregious harm, meaning appellant did not receive a fair and impartial trial. *Id.* To obtain a reversal for jury-charge error, appellant must have suffered actual harm and not just merely theoretical harm. *Sanchez v. State*, 376 S.W.3d 767, 775 (Tex. Crim. App. 2012); *Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986).

## B. Jury Instructions on Possession

In her second issue, Murray argues that the trial court erred in denying her requested jury charge "Number One," which included instructions that visibility and measurability of a controlled substance are evidence of knowing possession. As we noted earlier, there is no requirement that a controlled substance be visible and measurable to support a conviction for possession of a controlled substance. *See Joseph*, 897 S.W.2d at 376; *see also King*, 895 S.W.2d at 702-04; *Muckleroy*, 206 S.W.3d at 747; *Hyett*, 58 S.W.3d at 831. Additionally, in this issue, Murray asks this Court to resolve any conflicts in the evidence in her favor—something that we cannot do. *See Chambers*, 805 S.W.2d at 461; *see also Lancon v. State*, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008) (noting that because the resolution of conflicting testimony is within the province of the factfinder, appellate courts must defer to the jury's resolution of conflicts in the evidence); *Render v. State*, 316 S.W.3d 846, 859 (Tex. App.—Dallas 2010, pet. ref'd) ("An appellate court must give deference to a jury's decision regarding what weight to give contradictory testimonial

evidence because the decision is most likely based on an evaluation of credibility and demeanor, which the jury is in a better position to judge.").

Moreover, a review of the jury charge shows that the trial court's instructions on "possession" track the language of section 481.002(38) of the Texas Health & Safety Code and section 6.01(b) of the Texas Penal Code and, thus, are not erroneous. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38) (West Supp. 2015) ("'Possession' means actual care, custody, control, or management."); TEX. PENAL CODE ANN. § 6.01(b) (West 2011) ("Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of [her] control of the thing for a sufficient time to permit [her] to terminate [her] control."); *see also Martinez v. State*, 924 S.W.2d 693, 699 (Tex. Crim. App. 1996) (holding that a jury instruction that tracks statutory language "will not be deemed error on the part of a trial judge"). And finally, given that Murray did not object to the charge and, thus, must establish egregious harm, we note that "[w]hen the application paragraph correctly instructs the jury on the law applicable to the case, this mitigates against a finding of egregious harm." *Reed v. State*, 421 S.W.3d 24, 30 (Tex. App.—Waco 2013, pet. ref'd). Accordingly, we overrule Murray's second issue.

## C. Jury Instructions on Mistake of Fact

Next, in her third issue, Murray asserts that the trial court erred in denying her requested jury instruction on mistake of fact.

A trial court must charge the jury on any defensive issue raised by the evidence, "regardless of its substantive character." *Brown v. State*, 955 S.W.2d 276, 279 (Tex. Crim. App. 1997).

> A defendant is entitled to an affirmative defensive instruction on every issue raised by the evidence regardless of whether it is strong, feeble, unimpeached, or contradicted, and even if the trial court is of the opinion that the testimony if not entitled to belief. The defendant's testimony alone may be sufficient to raise a defensive theory requiring a charge.
>
> *Id.* (quoting *Williams v. State*, 630 S.W.2d 640, 643 (Tex. Crim. App. 1982)).
>
> This rule is designed to insure that the jury, not the judge, will decide the relative credibility of the evidence. [Citation omitted]. When a judge refuses to give an instruction on a defensive issue because the evidence supporting it is weak or unbelievable, he effectively substitutes his judgment on the weight of the evidence for that of the jury. [Citation omitted]. The weight of the evidence in support of an instruction is immaterial.
>
> *Id.* (quoting *Woodfox v. State*, 742 S.W.2d 408, 409-10 (Tex. Crim. App. 1987)).

*East v. State*, 76 S.W.3d 736, 737 (Tex. App.—Waco 2002, no pet.).

Based on the foregoing case law, Murray is only entitled to a mistake-of-fact instruction if she raised some evidence that she was mistaken about some specific fact that negated her intentional or knowing possession of a controlled substance. *Id.*; *see Celis v. State*, 416 S.W.3d 419, 430 (Tex. Crim. App. 2013). On appeal, Murray does not identify a specific fact about which she was mistaken, nor does she contend that the substances found inside her vehicle were something other than a controlled substance. Instead, in this issue, Murray once again discusses the sufficiency of the evidence, especially the fact

that the quantity of the methamphetamine was small.  We therefore conclude that Murray

has failed to demonstrate that the trial court erred in failing to submit an instruction on

mistake of fact.  *See East*, 76 S.W.3d at 737.

We further note that even if it was error to not submit an instruction on mistake of

fact, any such error was harmless.  *See Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim.

App. 2007) ("Jury-charge error is egregiously harmful if it affects the very basis of the

case, deprives the defendant of a valuable right, or vitally affects a defensive theory.");

*Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006) (same); *see also Patrick v. State*,

906 S.W.2d 481, 492 (Tex. Crim. App. 1995) ("For both preserved and unpreserved

charging error, 'the actual degree of harm must be assayed in light of the entire jury

charge, the state of the evidence, including contested issues and weight of probative

evidence, the argument of counsel and any other relevant information revealed by the

record of the trial as a whole.'" (quoting *Arline v. State*, 721 S.W.2d 348, 351-52 (Tex. Crim.

App. 1986))).  A review of the record demonstrates that Murray was not denied a valuable

right, nor was she prohibited from advancing a defensive theory.  In fact, Murray argued

that the methamphetamine was Newland's, not hers.  And as mentioned earlier, the

evidence is sufficient to support her conviction.  Therefore, given the above, we overrule

Murray's third issue.

## D. Jury Instructions on Voluntary Conduct

In her fourth issue, Murray alleges that the trial court erred in denying her requested charge on voluntary conduct. At trial, Murray requested the following instruction on voluntary conduct: "You are instructed that if you have a reasonable doubt as to whether the accused voluntarily engaged in the conduct of which the defendant is accused, you must acquit the defendant." On appeal, Murray emphasizes that "[i]t is reasonable for the jury to question whether Appellant voluntarily took any part in tracking the specks into the vehicle since she was not the only person who drove the vehicle."

In the definitions section of the jury charge, the trial court provided the following instructions: "'Possession' means actual care, custody, control, or management. 'Possession' is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of [her] control of the thing for a sufficient time permit her to terminate her control." This language tracks the language of section 481.002(38) of the Texas Health and Safety Code and section 6.01(b) of the Texas Penal Code. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(38); TEX. PENAL CODE ANN. § 6.01(b); *see also Martinez*, 924 S.W.2d at 699 (holding that a jury instruction that tracks statutory language "will not be deemed error on the part of a trial judge"). And in the application portion, the jury charge stated that:

You must decide whether the state has proved, beyond a reasonable doubt, two elements. The elements are that—

1. the defendant, Donna Jean Murray, possessed methamphetamine in Navarro County, Texas, on or about May 5, 2014 and

2. the defendant intended to possess or knew she was possessing methamphetamine.

You must all agree on both elements 1 and 2 listed above.

If you all agree the state has failed to prove, beyond a reasonable doubt, either or both of elements 1 and 2 listed above, you must find the defendant "not guilty."

If you all agree the state has proved both of the two elements above, you must find the defendant "guilty."

A review of the jury charge reveals no inaccurate statements of law with respect to voluntary conduct.

Furthermore, in this issue, Murray once again attempts to reargue the sufficiency of the evidence by highlighting the testimony of Jordan Burleson, Murray's son, who testified that he saw Newland in Murray's vehicle when Murray was not there. This testimony conflicts with testimony from Newland that he did not use the vehicle when Murray was not present—an issue that was resolved by the jury. *See Chambers*, 805 S.W.2d at 461; *see also Lancon*, 253 S.W.3d at 706; *Render*, 316 S.W.3d at 859. Additionally, as noted above, the evidence adduced at trial showed that Murray knowingly possessed a controlled substance because she used drugs with Newland in the vehicle and had been apprised of the presence of the methamphetamine during a previous encounter with

Detective Dunagan. Thus, based on the evidence produced at trial, we cannot say that Murray was entitled to an additional instruction on voluntary conduct. *See Ramirez-Memije v. State*, 444 S.W.3d 624, 627-28 (Tex. Crim. App. 2014) (rejecting appellant's contention that because he did not know the forbidden item contained contraband, his possession was not a voluntary act and concluding that appellant was not entitled to an instruction on voluntary conduct because he knowingly received the contraband and the legal requirement of a voluntary act was satisfied). We overrule Murray's fourth issue.

## IV. CONCLUSION

Having overruled all of Murray's issues on appeal, we affirm the judgment of the trial court.

AL SCOGGINS
Justice

Before Justice Davis,
     Justice Scoggins,
     and Judge Smith[6]
Affirmed
Opinion delivered and filed August 31, 2016
Do not publish
[CR25]



---

[6] The Honorable Steven Lee Smith, Judge of the 361st District Court of Brazos County, sitting by assignment of the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h) of the Government Code. *See* TEX. GOV'T CODE ANN. § 74.003(h) (West 2013).